UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON
CASE NO. 5:16-cv-00325-JMH

MT. HAWLEY INSURANCE COMPANY                                      PLAINTIFF

v.          **MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

MESA MEDICAL GROUP, PLLC, et al.                                  DEFENDANT

      This is an action to enforce the plain and unambiguous language in a professional services liability insurance policy, which states that the insurer "shall not be obligated to … defend or to continue to defend any suit or Claim after" the policy's applicable coverage limit has been tendered to the Insured.  Plaintiff, Mt. Hawley Insurance Company ("Mt. Hawley"), having tendered its coverage limit to Defendants, filed this action for a declaratory judgment enforcing this policy provision.  Defendants have refused to accept Mt. Hawley's tender and are attempting to create a continuing obligation for Mt. Hawley to pay for their continued defense, in direct conflict with the Insuring Agreement.  The business insurance policy here was issued to a sophisticated insured, and begins by stating that "the duty to defend and duty to pay are not separate."  Disregarding these clear contract limitations, Defendants seek to impose an obligation to defend that would extend well beyond what the insured purchased, an outcome in direct conflict with the rules controlling the construction of insurance policy contracts.

      Even assuming the truth of all facts pled by Defendants in their Answer and Counterclaim, under Fed.R.Civ.P. 12(c), Mt. Hawley is entitled to a judgment declaring that Mt.

Hawley's duty to defend the underlying tort action against Defendants terminated when Mt. Hawley tendered the $1 million policy limit to Defendants.

## I. Background Facts

On July 9, 2015 Haley Clontz filed a lawsuit in Pulaski Circuit Court alleging medical malpractice which, after amendment, named Defendants, MESA Medical Group, PLLC ("MESA"), Southeastern Emergency Physicians, LLC, Southeastern Emergency Services, P.C., Dr. Timothy Ziolkowski and Jennifer Dick ("the Contz lawsuit"). (Complaint at ¶14). Clontz alleged that Defendants failed to diagnose or treat a popliteal artery injury resulting from a fall, causing severe and permanent bodily injury, after she was brought by ambulance to the emergency room at Lake Cumberland Regional Hospital.[1]

Mt. Hawley issued Medical Professional Liability Policy number MME0000012 to Marshall Medical Management, LLC ("Marshall"), with a Policy Period of October 1, 2013 to October 1, 2014 (the Policy").[2] Pursuant to an endorsement, MESA is a Named Insured under the Policy. The remaining Defendants also claim either Insured or Named Insured status under the Policy for the claims in the Clontz lawsuit. Mt. Hawley has paid for counsel to represent Defendants in the Clontz lawsuit (to the extent Clontz seeks damages payable under the Policy). (Compl. at ¶15, 10, 12).

The Policy has a $1 million liability limit. The Insuring Agreement in the Policy states in relevant part:

> With respect to the insurance provided hereunder, the duty to defend and duty to pay are not separate. The **Company** shall have the right and duty to defend any suit against the **Insured** seeking **Damages** which are payable under the terms of

---

[1] See Amended Complaint from the Clontz lawsuit attached as Exhibit B to Defendants' Answer and Counterclaim in this action, at ¶¶ 11, 25. [Doc. No. 6-2, pp. 4, 6].

[2] A complete copy of the Policy is attached as Exhibit A to Mt. Hawley's Answer to Defendants' Counterclaim. [Doc. No. 11-1, pp. 1-38].

> this policy, even if the allegations of the suit are groundless, false or fraudulent. It is further agreed that the **Company** may make such investigations as it deems expedient and may settle any **Claim**, but the **Company** shall not be obligated to pay any **Claim** or judgment or to defend or to continue to defend any suit or **Claim** after the applicable limit of the **Company's** liability has been tendered to the **Insured** or the claimant or exhausted by the payment of judgments, settlements or by **Claims Expenses**.

[Doc. No. 11-1, p. 5].

Thus, under the clear language of the Policy, Mt. Hawley is entitled to tender its $1 million coverage limit to Defendants and discontinue defending Defendants in the Clontz lawsuit.

In late July and early August 2016, Mt Hawley attempted to resolve the claims in the Contz lawsuit by offering Haley Clontz the Policy's $1 million coverage limit to settle her claims against Defendants. (Counterclaim at ¶25, Doc. No. 6, p. 41). When this offer was rejected, Mt. Hawley tendered the applicable limit of the Policy to Defendants themselves. (Compl. at ¶17, 18; Counterclaim Exhibit C, Doc. No. 6-3). Defendants refused the tender. (Counterclaim at ¶33, Doc. No. 6, p. 42 and Exhibit D, Doc. No. 6-4). Mt. Hawley filed this action to request a declaratory judgment enforcing its right under the Insuring Agreement to discontinue defending Defendants in the Clontz lawsuit, and Defendants have filed a counterclaim seeking a declaratory judgment that Mt. Hawley's tender and withdrawal of the defense constitutes a breach of the Policy.

## II. Standard on motion for judgment on the pleadings.

Fed.R.Civ.P. 12(c) provides: "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The Court analyzes a Rule 12(c) motion for judgment on the pleadings in the same way as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Paulin v. Kroger Ltd. P'ship I*, No. 3:14CV-669-DJH, 2015 WL 1298583, at *3 (W.D. Ky. Mar. 23, 2015) (citing *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir.2010)). "For purposes of a motion for judgment on the pleadings, all well-

pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973); *J.P. Morgan Chase Bank v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). However, the court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (courts "need not accept as true legal conclusions or unwarranted factual inferences" when considering a Rule 12(c) motion). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

A plaintiff in a declaratory judgment action can bring a motion for judgment on the pleadings under Rule 12(c). *See Assurance Co, v. Waldman*, 2013 U.S. Dist. LEXIS 177437 (S.D. Ohio 2013) (granting the plaintiff insurer's motion for judgment on the pleadings where, taking all allegations of fact of the opposing party as true, the insurer was entitled to the declaratory judgment that it owed no duty to defend or indemnify an insured under the terms of the policy and, since no coverage existed, it was entitled to judgment on the pleadings on the insured's counterclaim for breach of contract and bad faith as well).

"When considering a motion for judgment on the pleadings, the Court may examine the complaint and its exhibits, items appearing in the record of the case, and documents incorporated by reference into the complaint and central to the claims." *Paulin*, 2015 WL 1298583, at *3 (citing *Barany–Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir.2008)). In *Commercial Money Center, Inc. v. Illinois Union Insurance Company*, 508 F.3d 327 (6th Cir. 2007), the Court explained that not only do documents attached to the pleadings become part of the pleadings to

be considered, but also "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id*. at 335-36. Because the Policy at issue here has been attached to the pleadings and referenced throughout, reliance on the Policy itself does not covert this to a Rule 56 motion.

No material issues of fact exist that would prevent this Court from entering a declaratory judgment that enforces the policy language contained in the Insuring Agreement as written and as agreed to by the parties. The Insuring Agreement unequivocally merges Mt. Hawley's duty to defend with its duty to pay under the Policy, and further terminates any obligation to continue defending after policy limit has been tendered to the Insured. Because this contract language is enforceable as written and no further coverage exists, Mt. Hawley is also entitled to judgment on the pleadings dismissing Defendants' counterclaims for breach of contract and bad faith.

### III. Mt. Hawley's policy should be enforced as written.

#### A. Kentucky rules for interpretation of insurance contracts.

Courts interpret insurance contract terms as a matter of law to ascertain whether coverage exists. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co*., 306 S.W.3d 69, 73 (Ky. 2010). Under Kentucky law, "'the court must give all terms their plain meanings and not rewrite an insurance contract to enlarge the risk.'" *U.S. Fidelity & Guar. Co. v. State Fire Coals, Inc*., 856 F. 2d 31, 33 (6th Cir. 1988) (quoting *United States Fire Ins. Co. v. Kentucky Truck Sales, Inc.,* 786 F. 2d 736, 739 (6th Cir. 1986) and *Simon v. Continental Ins. Co.*, 724 S.W. 2d 210, 213 (Ky. 1987)).

In fact, if the policy language is clear and unambiguous, the policy must be enforced as written. "[I]n the absence of ambiguities or of a statute to the contrary, the terms of an insurance policy will be enforced as drawn. *Osborne v. Unigard Indemnity Co*., Ky.App., 719 S.W.2d 737, 740 (1986); *Woodard v. Calvert Fire Ins. Co*., Ky., 239 S.W.2d 267, 269 (1951)." *Peabody*

*Painting & Waterproofing, Inc. v. Ky. Employers' Mut. Ins. Co.,* 329 S.W.3d 684, 688, (Ky.App. 2010). If the policy terms are unambiguous, the court "must enforce the policy as written without application of alternative rules of construction." *Id*. *See also Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131, (Ky. 1999) ("The words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning ... The trial court must give effect to what the parties expressly agreed upon instead of placing a strained interpretation thereon contrary to the intent of the parties ....")(internal citations omitted).

Only when a court finds specific policy language to be ambiguous should rules of interpretation, other than applying the plain language, be employed. For example, when two possible interpretations of the same policy language exist, the policy language should be construed in favor of the insured. *Wine v. Globe American Cas. Co.*, 917 S.W. 2d 558, 564 (Ky. 1996).[3] Furthermore, the reasonable expectations doctrine, the rule that an ambiguous term should be interpreted in favor of the insured's reasonable expectations, applies only to policies with ambiguous terms. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003).

Kentucky courts have also recognized that these rules of construction do "not mean that every doubt must be resolved against [the insurer] and do not interfere with the rule that a policy must receive a reasonable interpretation consistent with the parties' object and intent ordinarily expressed in the plain meaning and/or language of the contract." *Motorists Mut. Ins. Co. v. RSJ,*

---

[3] *Meyers v. Kentucky Medical Ins. Co*., 982 S.W.2d 203 (Ky. App. 1997) also involved the interpretation of a medical malpractice liability policy. The court held that anti-stacking provisions were unambiguous and refused to invoke the doctrine of reasonable expectations where no ambiguity existed. *Id*. at 209. The court stated:

> The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a non-existent ambiguity be utilized to resolve a policy against the company. We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer.

*Id*. at 208.

*Inc.*, 926 S.W. 2d 679, 680 (Ky.App. 1996).  Furthermore, a "non-existent ambiguity" should not be created in order to find coverage for an insured or to rewrite a policy to enlarge the insurer's risk.  *Id*.

The Kentucky Court of Appeals recently re-iterated and summarized the rules for the construction of insurance contracts in *Davis v. Ky. Farm Bureau Mut. Ins. Co*., 2016 Ky. App. LEXIS 34 (Ky.App. Mar. 11, 2016):

> We apply certain rules of construction, including that when the terms of an insurance contract are unambiguous and not unreasonable, the terms will be enforced as written. *Wehr Constructors, Inc. v. Assurance Co. of America,* 384 S.W.3d 680, 685 (Ky. 2012). Unambiguously defined terms are "interpreted in light of the usage and understanding of the average person." *Stone v. Kentucky Farm Bureau Mut. Ins. Co*., 34 S.W.3d 809, 811 (Ky. App. 2000).  Although ambiguous terms are to be construed in favor of the insured, "we must also give the policy a reasonable interpretation, and there is no requirement that every doubt be resolved against the insurer." *Id*. Moreover, there must be an actual ambiguity. "The mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity." *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon,* 157 S.W.3d 626, 633-34 (Ky. 2005) (*quoting True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003)).

*Id*. at *5.

> B. **The Insuring Agreement's contractual right to tender the policy limit to the insured and extinguish a duty to defend is clear and unambiguous.**

The Insuring Agreement of the Policy Mt. Hawley issued to Marshall, under which MESA and the other Defendants are being defended by Mt. Hawley, is clear and unambiguous. It begins by eliminating the separation of duties often cited with general grants of defense coverage by stating that "**the duty to defend and duty to pay are not separate.**"  (bold added). And, unlike policies that contain general grants of defense coverage, this Policy does not require Mt. Hawley to pay a judgment or settlement before its defense obligation ends.  Instead, it adds another option, with the Insuring Agreement plainly stating that "**the Company shall not be**

**obligated** to pay any Claim or judgment or to **defend or to continue to defend** any suit or Claim **after the applicable limit of the Company's liability has been tendered to the Insured** …." (bold added). There is nothing confusing or misleading about these contract provisions. Mt. Hawley is no longer obligated to defend any insured after it tenders the policy limit to the Insured, which it has done here. These Policy terms should be enforced as written without application of alternative rules of construction.

Parties to a contract, especially sophisticated, corporate parties as in this case, have to freedom to enter into contracts with whatever terms they see fit. "[I]nsurance contracts are like any other contracts in that they are voluntarily entered into by the parties." *Belcher v. Travelers Indemnity Co.*, 740 S.W.2d 952, 953 (Ky. 1987). Mt. Hawley issued the Policy to Marshall, a limited liability company that was involved in the management of emergency rooms and emergency room staff in at least 36 hospital locations across Kentucky, as listed on the Scheduled Location Coverage Limitation Endorsement attached to the Policy. This was not a contract of adhesion imposed by a party of superior bargaining power. In fact, the number of endorsements and policy changes that were purchased as part of the Policy evidences the sophisticated nature of this contract for the insurance coverage and the parties to it. The insureds could have (i) negotiated with Mt. Hawley to remove or amend the language discussed above if the insured had wanted different terms or (ii) purchased an additional endorsement that removed the tender right from the Insuring Agreement; but they did not. Defendants have received the coverage for which they negotiated and paid.

Defendants will no doubt try to "muddy the waters" and create a non-existent ambiguity. In the Counterclaim, Defendants cite two endorsements they claim conflict with the unambiguous Insuring Agreement language describing Mt. Hawley's right to discontinue

defending. However, the purposes of those endorsements are separate and distinct from the Insuring Agreement language in this case, and those endorsements operate completely independently of the unambiguous language discussed above.

1. **The Claims Expense endorsement reaffirms Mt. Hawley's right to extinguish the duty to defend.**

First, Defendants have argued that the Claims Expense In Addition to Limits Amendatory Endorsement creates a conflict with the Insuring Agreement. However, this endorsement expressly amended only the language in the Insuring Agreement that had claims expense (including defense costs) included within the Policy Limits of Liability. It states:

**CLAIMS EXPENSE IN ADDITION TO LIMITS AMENDATORY ENDORSEMENT**

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, the **Company** hereby agrees to pay **Claims Expenses** in addition to the limits of liability as specified on the **DECLARATIONS** page.

Nothing contained in this endorsement shall operate to prevent the **Company** from tendering its limits of liability hereunder as provided under the policy to which this endorsement is attached (Article I.A.), and by such action eliminating its responsibility for future **Claims Expenses**.

All other terms, conditions and exclusions of the policy remain unchanged.

[Doc. No. 11-1, p. 18].

Under this endorsement, Mt. Hawley agreed to pay Claims Expenses in addition to the limits of liability, instead of having the Claims Expenses erode the coverage limits; but that agreement was not unlimited or provided in a vacuum. In the very next sentence of the endorsement, it states: "Nothing contained in this endorsement shall operate to prevent the Company [Mt. Hawley] from tendering its limits of liability hereunder as provided under the policy to which this endorsement is attached (Article I.A.), and by such eliminating its responsibility for future Claims Expenses." So, rather than creating an ambiguity, this endorsement actually reaffirms Mt. Hawley's right to tender its policy limit to the Insured and extinguish the duty to defend.

2. **The Consent to Settle Endorsement is also consistent with the right Mt. Hawley is enforcing.**

Defendants have also claimed that the General Change Endorsement (Consent to Settle Endorsement), which gives the Named Insured the right to prevent settlements to which it has not consented, somehow expanded – rather than further limited – Mt. Hawley's defense obligations. Actually, that Endorsement (i) added a circumstance under which Mt. Hawley was no longer obligated to continue to defend and (ii) created a circumstance under which the Claims Expense payment reverted to eroding the coverage limit, rather than being in addition to it.

The Endorsement reads:

> **GENERAL CHANGE ENDORSEMENT (CONSENT TO SETTLE ENDORSEMENT)**
>
> This endorsement modifies the insurance policy as follows:
>
> In consideration of the premium charged, for **Claims** first made on or after January 26, 2012, it is agreed that Article III. INVESTIGATION, DEFENSE AND SETTLEMENT, Section B. Settlement is deleted in its entirety and replaced by the following:
>
> III. INVESTIGATION, DEFENSE AND SETTLEMENT
>
>   B.  Settlement. The **Company** will not settle any **Claim** without the consent of the Named Insured. If the Named Insured refuses to consent to a settlement that the Company recommends and the claimant will accept, then the **Company** will have the right, but not the duty or obligation, to continue to defend any such **Claim** or suit. The **Company's** liability for any settlement or judgment shall not exceed the amount for which the **Company** could have settled if the Named Insured had consented less all of the **Claims Expense** incurred from the date of the **Company's** recommendation. This amount constitutes the applicable limits of liability of the policy.
>
> All other terms, conditions and exclusions of the policy remain unchanged.

[Doc. No. 11-1, p. 31].

With respect to the claims in the Clontz lawsuit and Mt. Hawley's tender to Defendants, this endorsement is factually and legally irrelevant. Had Haley Clontz accepted Mt. Hawley's offer of its coverage limit to resolve her claims, and had the Named Insured refused to consent to that proposed settlement, then this endorsement would have had two significant effects on the defense obligation. First, it states that Mt. Hawley would no longer have the duty or obligation

to continue to defend. Second, if Mt. Hawley chose to continue the defense, then the expenses it incurred thereafter would be deducted from the coverage limit. Under the latter circumstance, the indemnity available to pay to the claimant would decrease as the defense expenses increase, potentially shifting some of the ultimate defense or indemnity cost to the Insured. In other words, this endorsement provided an additional limitation on the duty to defend, rather than expanding it.

By its express terms, this endorsement only becomes relevant when there is an offer by Mt. Hawley that a claimant like Haley Clontz will accept. That did not happen here. Had it, the effect would have been to have that offer amount set the ceiling on Mt. Hawley's indemnity exposure, then allow Mt. Hawley to ether discontinue its defense or deduct future defense costs from the liability limit. Here, that offer was for the coverage limit; but that is generally not the case. Where the accepted, conditional offer is for less than the limit, this endorsement is designed to re-set the coverage limit – for both indemnity *and* the defense expense combined – to no more than that amount.

In responding to Mt. Hawley's tender, Defendants have argued that the Consent to Settle endorsement "takes away Mt. Hawley's ability to unilaterally pay its limits without the insured's consent, regardless of whom will receive that money." (Doc. No. 6-4, p. 102). Defendants also suggested in the letter that this endorsement somehow creates a Policy ambiguity, albeit without explaining what or how. To the contrary, the endorsement's plain language is clear. It refers only to settlements, and to settlements "the claimant will accept." Defendants' intimation that this provision somehow refers to the Insuring Agreement's tender right or applies to the payment of that tender to the Insured is the very kind of imagined ambiguity the Kentucky courts have said they will not entertain. There is nothing in the Consent to Settle Endorsement that affects

Mt. Hawley's ability to tender its limit of liability to the insured to extinguish a duty to defend beyond the value of the Policy.

> C. **Kentucky law does not prevent the Parties from restricting or eliminating the duty to defend, or from tying it to the duty to indemnify.**

An insurer's obligation to defend an insured is simply a contractual obligation between the parties. "The obligation to defend arises out of the insurance contract…" *Thompson v. West American Ins. Co*., 839 S.W.2d 579, 581 (Ky.App. 1992)(*See also* 22-136 Appleman on Insurance Law & Practice Archive § 136.1 (2nd 2011) ("The duty to defend arises from the terms of the insurance contract.")). "The nature of the insurer's duty to defend is purely contractual. There is no common law duty as to which the courts are free to devise rules. The obligation on the court is merely to interpret the language of the insurance contract." *All-Star Ins. Corp. v. Steel Bar, Inc*., 324 F. Supp. 160, 163 (N.D. Ind. 1971).

Because the obligation to defend is based entirely on the terms of the contract, parties to the contract may modify that agreement. "Duty to defend insured in suits is contractual, and if there is no contract to defend there is no duty to defend. Of course, the obligation to defend may be stated more narrowly." 7cf-196 Appleman on Insurance § 4682 (2016). "The nature of the insurer's duty to defend is purely contractual and depends, in the first instance, on the language of the particular policy involved." *Okada v. MGIC Indemnity Corp*., 795 F.2d 1450, 1454 (9th Cir. Haw. 1986) (noting that "[t]he parties are free to modify by express agreement general contract principles that apply to policies").

Under Kentucky law, when "[t]he duty to defend is separate and distinct from the obligation to pay any claim," it can be "broader than the duty to indemnify."[4] However, because

---

[4] *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.,* 814 S.W.2d 273, 279-80 (Ky. 1991).

the duty is purely a creature of contract and not common law, there is no authority that prevents sophisticated parties to an insurance policy from agreeing otherwise, as was done here. The continuum of possible defense provisions in any insurance contract goes from (i) at one end, broad insuring agreement duty to defend language, as in the *Brown Foundation* case and many form commercial general liability insurance policies, to (ii) at the other end, no duty to defend at all, as found in many specialty lines insurance policies or umbrella policies. The Policy here is in between. It limits the duty to defend by joining it with the duty to indemnify and by allowing Mt. Hawley to discontinue the defense by paying the indemnity limit to the Insured. Any authority that Defendants will suggest to construe a duty to defend at the broad end of the continuum is inapplicable.

For example, in responding to Mt. Hawley's tender, Defendants rely on the nearly 50 year old case of *Ursprung v. Safeco Ins. Co.*, 497 S.W.2d 726, 731 (Ky. App. 1973), claiming that *Ursprung* means that the duty to defend *always* continues after an insurer pays its policy limits. It does not. There is no indication that the duty to defend created by the policy in *Ursprung* contained any limitation or termination provision, or that it was expressly joined with the duty to indemnify. Therefore, the court held "that the contractual obligation to defend carries with it an obligation to prosecute an appeal from a judgment against an insured where there are reasonable grounds for appeal" regardless of whether the policy limits were paid into court. *Id*. at 731-32.

Unlike *Ursprung*, this action does not involve the prosecution of an appeal or an attempt by Mt. Hawley to pay the applicable limit into court. Further, the *Ursprung* court did not interpret any specific policy language that terminated the duty to defend upon payment of the coverage limit to the insured. The court merely concluded that the insurer's duty to appeal in

that case "flows from" the broad, unlimited policy language that the insurer "shall defend any suit alleging such damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false, or fraudulent." *Id*. at 728. Here, Mt. Hawley and its Named Insured agreed to significant limitations that Defendants would have this Court ignore.

Much more recently, in the unpublished case of *Safeco Ins. Co. v. Ritz*, 2006 U.S. Dist. LEXIS 1604 (E.D.Ky. 2006), this Court enforced a policy provision that terminated the duty to defend once policy limits were exhausted. In *Ritz*, the insured caused a two-car accident injuring four other people, but the policy limits were only $25,000/$50,000. The tortfeasor's insurer settled claims of the only 2 injured parties to present claims, paying the full policy limits. *Id*. at *3. Subsequently, another injured party asserted a claim and, in anticipation of a fourth claim, the insurer filed an declaratory judgment action requesting confirmation that it was not obligated under the policy for any additional claims and had no duty to defend the insured against the new claims. The insured filed an answer that demanded a defense and indemnity and contained a counterclaim for bad faith. *Id*. at *4.

The policy in *Ritz* specifically stated in the insuring agreement that "[o]ur duty to settle or defend ends when our limits of liability for this coverage have been exhausted." *Id*. at *12. This Court held that the limitation on the duty to defend was valid under Kentucky law:

> Under Kentucky law, "an insurer has a duty to defend if there is an allegation which might come within the coverage terms of the insurance policy, but this duty ends once the insurer establishes that the liability is in fact not covered by the policy." *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon, 157 S.W.3d 626, 635 (Ky. 2005)*. Accordingly, the provision of the policy providing that Safeco's duty to defend ends when the policy limits have been exhausted is valid under Kentucky law. Thus, assuming that Safeco's settlement with Spradlin and Bialkoski was valid, it no longer has any duty to defend the Ritzes' in any future claims against them arising from this accident.

*Id*. at *12-13.  As a result, if the policy limits had been validly exhausted by settlement with the first two claimants in good faith, then the insurer had no duty to defend the claims of the last two claimants.  *Id*. at *13-14.

Like the policy in *Safeco Ins. Co. v. Ritz*, and unlike the policy in *Ursprung,* the Mt. Hawley Policy contains specific provisions clearly intended to limit or terminate the contractual duty to defend.  And because Mt. Hawley has tendered the limit to the Insured, and not to Clontz by way of settlement, there is no issue concerning the validity of a settlement.  Due to the absence of ambiguity, the contract provision should be enforced as written.

The rule that a contract will be enforced strictly according to its terms in the absence of an ambiguity controls in this case, and there is no public policy that would prevent such enforcement.  The Kentucky Supreme Court has made it clear that "[c]ourts will not disregard the plain terms of a contract between private parties on public policy grounds absent a clear and certain statement of strong public policy in controlling laws or judicial precedent." *State Farm Mut. Auto Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 880 (Ky. 2013).  The Kentucky Supreme Court noted that "[t]he United States Supreme Court has stated that under federal law public policy will render a contract term unenforceable only if the public policy is "'explicit,' well defined,' and 'dominant,' [and may] be 'ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.*  (quoting and citing multiple U.S. Supreme Court cases, including *Eastern Associated Coal Corp. v. United Mine Workers of America, District 17*, 531 U.S. 57, 62, (2000)).   There is no Kentucky statute that prevents parties to an insurance contract from linking the duty to defend to the duty to pay, or from agreeing that the duty to defend terminates when policy limits are tendered to the insured in a professional services policy, or even from excluding the duty entirely, from the outset.

Thus, there is no well-defined public policy that would override the "very substantial policies in favor of the freedom of contract and the enforcement of private agreements." 413 S.W.3d at 880.

In Kentucky, medical malpractice insurance is voluntary insurance coverage. It is not like mandatory motor vehicle liability insurance that is required to be purchased in minimum amounts under the Kentucky Motor Vehicle Reparations Act, KRS 304.39-010 *et seq*. "The same 'public policy' considerations that pertain to mandatory coverages do not pertain to optional coverages." *Cain v. Am. Commerce Ins. Co.*, 332 S.W.3d 81, 84 (Ky.App. 2009). Thus, there is no legislation, common law or public policy that prevents the enforcement of the Mt. Hawley's Insuring Agreement as written.

### IV. Conclusion

Mt. Hawley is entitled to a declaratory judgment that the policy language contained in the Insuring Agreement is valid and enforceable and that its duty to defend terminated at the time it tendered its policy limit to Defendants. Because the policy language in the Insuring Agreement is valid and enforceable, Mt. Hawley did nothing wrong in asserting its rights under the contract, in tendering its policy limits to Defendants, and in terminating any continuing duty to defend. Therefore, the breach of contract and bad faith claims in Defendants' Counterclaim must fail.[5] Mt. Hawley respectfully requests that the Court enter a judgment on the pleadings in its favor by issuing the declaratory judgment requested and dismissing Defendants' Counterclaims.

---

[5] The three required elements for a cause of action for bad faith in Kentucky are "(1) The insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or in fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Because Mt. Hawley is not obligated to continue to defend after it tendered its policy limits and had a reasonable basis in law and fact for terminating its duty to defend based on the enforceable policy language, Defendants' bad faith claim fails as a matter of law.

Respectfully submitted,

s/Robert L. Steinmetz
Robert L. Steinmetz
rsteinmetz@gsblegal.com
Gwin Steinmetz & Baird, PLLC
401 West Main Street, Suite 1000
Louisville, KY  40202
(502) 618-5711 (phone)
(502) 618-5701 (fax)

*Counsel for Mt. Hawley Insurance Company*

### CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Anthony Sammons, Anthony.sammons@dinsmore.com
Joel C. Hopkins, jhopkins@saul.com
Joseph C. Monahan, jmonahan@saul.com

s/Robert L. Steinmetz

T:\STEINMETZ\RLI\Clontz v. Mt. Hawley\Memorandum in Support of Motion for Judgment on Pleadings.docx