UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON
CIVIL ACTION NO. 5:16-cv-00325-JMH


MT. HAWLEY INSURANCE COMPANY

                                                          PLAINTIFF


v.


MESA MEDICAL GROUP, PLLC; SOUTHEASTERN
EMERGENCY PHYSICIANS, LLC; SOUTHEASTERN
EMERGENCY SERVICES, P.C.; TIMOTHY
ZIOLKOWSKI, M.D.; and JENNIFER DICK, PA-C            DEFENDANTS


### DEFENDANT/COUNTERCLAIM PLAINTIFFS' RESPONSE IN OPPOSITION TO PLAINTIFF'S / COUNTERCLAIM DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

/s/ Anthony Sammons_____
Anthony Sammons
Dinsmore & Shohl, LLP
Lexington Financial Center
250 West Main Street
Suite 1400
Lexington, KY  40507
859-244-7134
Anthony.sammons@dinsmore.com

Joel Hopkins
Joseph C. Monahan
Amy L. Piccola
Saul Ewing LLP
2 North Second Street, 7th Fl.
Harrisburg, PA  17101
717-257-7525
*Pro Hac Vice Admission Pending*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY FACTS AND PROCEDURAL HISTORY ............................................. 2

   A. The Mt. Hawley Policy ........................................................................................... 2

   B. The Clontz Litigation and Mt. Hawley's "Dump and Run" ................................. 4

III. QUESTIONS PRESENTED .......................................................................................... 6

IV. ARGUMENT .................................................................................................................. 7

   A. Standard for Motions for Judgment on the Pleadings ........................................... 7

   B. Kentucky Law Prohibits Mt. Hawley From Withdrawing its Defense ................. 7

   C. Mt. Hawley's Questionable Right to Tender and Withdraw Its Defense is Superseded By Bargained-For Policy Endorsements ........................................... 12

     1. Mt. Hawley Does Not Have the Right to Tender Its Limits to the Insureds: .................. 12

     2. The Purported Right to Tender is Superseded By Policy Endorsements ........................ 13

   D. Mt. Hawley's Policy Interpretation Would Render the Policy's Coverage Illusory and Invalid As a Matter of Law ............................................................... 15

   E. At a Minimum, the Policy is Ambiguous, Creating an Issue of Fact Fatal to Mt. Hawley's Motion ................................................................................................... 19

   F. Waiver and Estoppel Preclude Mt. Hawley from Withdrawing its Defense ........ 21

V. CONCLUSION ............................................................................................................. 23

## I. INTRODUCTION

Mt. Hawley is asking this Court to disregard two bargained-for policy endorsements and summarily bless the insurer's self-serving decision to tender its policy limits to its insureds and withdraw from defending them in a substantial medical malpractice case just months before trial.[1] That "dump and run" has forced the insureds to decide whether to use the policy limits to pay for their ongoing defense (contrary to the policy endorsement requiring Mt. Hawley to defend claims) and how they should be shared among the various insureds. It also significantly reduced the value of the policy's $1,000,000 liability limit, which is intended to pay third party settlements *only*. All of this is consistent with Mt. Hawley's practice of placing its financial interests above those of its insureds, including its refusal to retain independent counsel despite obvious conflicts of interest and questioning coverage for one insured despite having previously acknowledged coverage.[2]

Contrary to Mt. Hawley's self-serving and incorrect interpretation of its policy, the law of Kentucky does not permit an insurer with a discrete duty to defend to avoid that duty by paying its policy limits. Under no circumstances is an insurer able to avoid its duty to defend when its payment does not protect its insureds, which is precisely what happened here. The fact is, the policy only arguably allows Mt. Hawley to tender limits *after* the insureds' liability has been determined, which has not happened here. Moreover, the language on which Mt. Hawley relies

---

[1] Mt. Hawley initially planned to hand those limits over to the plaintiff in the underlying action, which would have funded the plaintiff's litigation efforts while leaving its insureds bare. Fortunately, counsel was able to convince Mt. Hawley of the error in its plan before it made such a monumental blunder.

[2] Mt. Hawley also fabricated a theory of coverage under an unrelated insurance policy then spoon-fed that non-issue to plaintiff's counsel in the underlying action, leaving the insureds to clean up the mess as underlying plaintiff's counsel runs down the rabbit hole Mt. Hawley created.

has been superseded and is contradicted by the aforementioned bargained-for endorsements, which would be rendered meaningless and illusory under Mt. Hawley's view of the policy. Even if that were not the case, Mt. Hawley's policy is a model of confusion and inconsistencies, which must either be resolved in favor of the insureds *or* through the development of extrinsic evidence, which has not yet occurred. Mt. Hawley's motion must be denied.

## II.  SUMMARY FACTS AND PROCEDURAL HISTORY

### A.  The Mt. Hawley Policy

Mt. Hawley issued medical professional liability policy number MME0000012 (the "Policy") to Marshall Medical Management, LLC ("Marshall") as the First Named Insured, and MESA Medical Group, PLLC (MESA), Southeastern Emergency Physicians, LLC (SEP), Southeastern Emergency Services, P.C. (SES), Timothy Ziolkowski, M.D. and Jennifer Dick, PA-C, as Named Insureds, Additional Named Insureds or Additional Insureds. *See* Mt. Hawley's Complaint ("Compl.") at ¶ 10; Defendants'/Counterclaim Plaintiffs' Answer, Affirmative Defenses and Counterclaims ("Answer/Counterclaim") at ¶ 15. A true copy of the Policy is attached to the Answer/Counterclaim and also attached hereto as Exhibit "A." The Policy provided coverage for the period of October 1, 2013 to October 1, 2014. *See* Policy; Compl. at ¶ 10; Answer/Counterclaim at ¶ 10.

Mt. Hawley's base policy form (the "Base Form"),[3] which is a standard form used for many different types of policyholders, provides that the insurer will "*pay on behalf of* the **Insured** those sums which the **Insured** is legally obligated to pay as **Damages** because of a **Loss Event** . . . to which this Insurance applies . . .." (Italics added). Policy at 1 of 10; Answer/Counterclaim at ¶ 16. The Base Form also states that Mt. Hawley "shall have the right

---

[3] The Base Form is identified by form number MML 101i (05/13).

and duty to defend any suit against the **Insured** seeking **Damages** which are payable under the terms of this policy . . ..."  Policy at 1 of l0; Answer/Counterclaim at ¶ 17.  That same provision states:

> . . . the duty to defend and duty to pay are not separate," and that "the **Company** shall not be obligated to pay any **Claim** or judgment or to defend or to continue to defend any suit or **Claim** after the applicable limit of the **Company's** liability has been tendered to the **Insured** or the claimant or exhausted by the payment of judgments, settlements or by **Claims Expenses**.

*Id*.

The Base Form also provides that "[t]he Company shall have the right to negotiate, investigate, defend or appeal any **Claim** or proceeding which, in the opinion of the **Company**, is or may be **Insured** [sic] under this policy," and that "[t]he **Company** shall have the right to settle any **Claim** as it deems necessary."  Policy at 5 of 10.  Additionally, "[t]he limits of liability stated in the Declarations include all payments on behalf of an **Insured** for both **Indemnity** and **Claims Expenses**." *Id*.; Answer/Counterclaim at ¶ 18.  The term "claims expenses" is defined to include, among other things, defense costs.  Policy at 5 of 10.

The policy language from the Base Form quoted above afforded Mt. Hawley the right to defend and settle covered claims as the insurer deemed appropriate.  It also provided that the Policy's $1,000,000 limit would be eroded by costs incurred in connection with the defense of covered claims.  Those provisions, however, were modified by bargained-for endorsements to give the Named Insured the exclusive right to decide whether a claim should be paid *and* to make Mt. Hawley responsible to pay defense costs *in addition to* the policy limits that were to be used to pay third-party claims.[4]  Answer/Counterclaim at ¶¶ 16-19.  Specifically, the Claims

---

[4] Those endorsements are identified as forms MML 308 (10/12) and MML 2100 (10/12), respectively.

-3-

Expense In Addition To Limits Amendatory Endorsement (the "Claims Expense Endorsement")

provides:

> In consideration of the premium charged, the **Company** hereby agrees to pay **Claims Expenses** in addition to the limits of liability as specified on the **DECLARATIONS** page.
>
> Nothing contained in this endorsement shall operate to prevent the **Company** from tendering its limits of liability hereunder . . . and by such action eliminating its responsibility for future **Claims Expenses**.

Policy, Claims Expense Endorsement; Answer/Counterclaim at ¶ 18.  The General Change

Endorsement (Consent To Settle Endorsement) modified the Policy by providing:

> The **Company** will not settle any **Claim** without the consent of the Named Insured.  If the named Insured refuses to consent to a settlement that the **Company** recommends and the claimant will accept, then the **Company** will have the right, but not the duty or obligation, to continue to defend any such **Claim** or suit.

Policy, Consent to Settle Endorsement; Answer/Counterclaim at ¶ 19.

### B.  The Clontz Litigation and Mt. Hawley's "Dump and Run"

On or about July 9, 2015, a medical malpractice lawsuit was filed by Haley Clontz in the

Circuit Court for Pulaski County, Kentucky (the "Clontz Litigation").  Compl. at ¶ 14;

Answer/Counterclaim at ¶ 21.  Each Insured was eventually named as a defendant in that action

and timely tendered their defense to Mt. Hawley under the Policy.  Answer/Counterclaim at ¶ 21.

A true copy of the Amended Complaint in the Clontz Litigation is attached to the Insureds'

Answer/Counterclaim as Exhibit "B".  Mt. Hawley accepted those defenses and initially assigned

one counsel to defend all Insureds.  *Id*. at ¶¶ 22-23.  Then, after Mt. Hawley was forced to assign

separate counsel due to conflicts created by the joint representation initially offered by Mt.

Hawley, Mt. Hawley's counsel attempted to reserve the insurer's rights under the Policy.  *Id*. at ¶

24.

On or about July 29, 2016, Mt. Hawley offered to pay Clontz the Policy's $1 million liability limit in exchange for the release and dismissal of the Insureds from that action.  *Id*. at ¶ 25.  Clontz rejected that offer, causing Mt. Hawley to realize it would be cheaper to withdraw from defending the Insureds than to protect them through trial.  *Id*. at ¶ 26.  Mt. Hawley therefore unilaterally advised the Insureds on or about August 18, 2016, that it "decided to exercise its right under the Insuring Clause of the Policy to tender the applicable $1 million coverage limit to the Insured *or the claimant* and thereafter discontinue to defend the [Clontz] Litigation." (Emphasis added).  Compl. at ¶ 18; Answer/Counterclaim at ¶ 27.  A true and correct copy of Mt. Hawley's August 18, 2016 letter is attached to the Insureds' Answer/ Counterclaim as Exhibit "C".

Mt. Hawley's August 18 letter explained that the insurer was tendering the Policy limit "jointly to you as the Insured, and notifies you that it will discontinue defending you in the Litigation upon payment of the limit to you (jointly) or the plaintiff in the Litigation."  *Id*.  The letter also requested that the Insureds advise Mt. Hawley within 14 days of the letter (by September 1, 2016) to whom Mt. Hawley should deliver the Policy proceeds.  *Id*.  Because the Policy and the law of Kentucky do not allow Mt. Hawley to dump its policy limits and avoid its duty to defend, the Insureds rejected Mt. Hawley's purported tender on or about August 29, 2016, and demanded that the insurer comply with its obligations under the Policy.  *Id*. at ¶¶ 29-33.  A copy of counsel's August 29, 2016 letter is attached to the Answer/Counterclaim as Exhibit D.  *Id*. at ¶ 33.

Inexplicably, Mt. Hawley filed this action on August 25, 2016, days <u>before</u> the Insureds rejected the insurer's attempted tender and prior to Mt. Hawley's arbitrary deadline.  *See* filing date of Compl.; Answer/Counterclaim at ¶ 36.  Mt. Hawley also did not wait for this Court to

determine the parties' rights and obligations, which was ostensibly the reason Mt. Hawley filed

this action in the first place. Answer/Counterclaim at ¶ 37. Instead, on or about September 6,

2016, Mt. Hawley instructed the Insureds to submit all invoices for work performed on their

behalf through September 1, 2016. *Id*. at ¶ 38. Mt. Hawley further advised that it would not pay

any defense costs incurred by the Insureds after that date.[5] *Id*.

On or about September 14, 2016, Mt. Hawley paid its policy limits over to the Insureds'

counsel[6] and has subsequently refused to participate in the Insureds' defense or the settlement of

the Clontz Litigation. The Insureds' filed their Answer/Counterclaim in this action on

September 7, 2016, seeking a declaratory judgment and raising claims against Mt. Hawley for

breach of contract, bad faith and violations of the Unfair Claims Settlement Practices Act. *See*,

generally, Answer/Counterclaim. Mt. Hawley responded to the Insureds' claims on October 3,

2016, and filed a Motion for Judgment on the Pleadings on October 20, 2016, to which the

Insureds' now respond.

## III. QUESTIONS PRESENTED

1. Whether Kentucky law prevents Mt. Hawley from withdrawing its defense where the insurer's duty to defend is distinct from the duty to indemnify and Mt. Hawley's tender has not protected the Insureds in the Clontz Litigation?

   **Answer:** Yes

2. Whether Mt. Hawley's "dump and run" violates the bargained-for terms of the policy that give the Insureds the right to consent to payments and have the insurer pay defense costs in addition to the Policy's liability limit?

   **Answer:** Yes

---

[5] Mt. Hawley undoubtedly knew that the months leading up to trial require intense and therefore expensive work by defense counsel.

[6] Counsel accepted those limits under a reservation of the Insureds' rights to prove that Mt. Hawley's tender was improper and in bad faith.

3. Whether Mt. Hawley's interpretation of the Policy would render the consent to settle and defense endorsements illusory?

   **Answer**: Yes

4. Whether the Policy's provisions that purportedly allow Mt. Hawley to tender its limits and withdraw its defense create an ambiguity that must be interpreted in favor of the Insureds' reasonable expectations or require parol or extrinsic evidence to resolve?

   **Answer**: Yes

5. Whether Mt. Hawley is estopped from withdrawing its defense where it failed to reserve its rights for months after accepting the Insureds' defense, thereby causing the Insureds to detrimentally rely on Mt. Hawley's claims handling expertise?

   **Answer**: Yes

## IV.  ARGUMENT

### A.  Standard for Motions for Judgment on the Pleadings

In considering a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), this Court is to apply the same standard as applies to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *J.P. Morgan Chase Bank N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).  That is, all well-pleaded allegations of the non-moving party must be taken as true, and the "motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Winget* at 582, *quoting Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith*, 479 F.2d 478, 480 (6th Cir. 1973).  A Rule 12(c) motion may only be granted where there is no material issue of fact and the movant is entitled to judgment as a matter of law.  *Winget* at 582.  Unless there is no set of facts that could result in liability for the non-moving party, a Rule 12(c) motion should be denied and discovery should proceed.  *Breeden v. HCA Physician Services, Inc.*, 834 F. Supp. 2d 616, 619 (W.D. Ky. 2011).

### B.  Kentucky Law Prohibits Mt. Hawley From Withdrawing its Defense

Liability policies with a duty to defend generally provide that defense costs will either be part of or in addition to the policy's liability limits. The former is known as an "eroding" or "defense within the limits" policy, while the latter is referred to as a "non-eroding" or "defense outside the limits" policy. A non-eroding policy like the Mt. Hawley Policy imposes two distinct duties upon the insurer – the duty to indemnify third party losses and the duty to defend covered claims. In that case, the insurer has "an ongoing responsibility to the insured with respect to the defense *even if the policy limits have been met*." 1 Insurance Claims & Disputes § 4:32 (6th ed.) (emphasis added). That ongoing responsibility exists regardless of whether the insurer has paid a judgment, contributed to a settlement or paid its policy limits into court or to the insured. *Id* (citing *Ursprung v. Safeco Ins. Co. of America*, 497 S.W.2d 726 (Ky. 1973)).

In *Ursprung*, the defendant's insurer, Safeco, refused to appeal an excess jury award entered against its insureds. After the trial court denied the insured's post-trial motions, Safeco unilaterally decided to pay its $10,000 policy limit into court and leave its insured to either fund an appeal or pay the excess verdict. A subsequent lawsuit against Safeco alleged, among other things, that it improperly withdrew its defense. The trial court granted summary judgment in favor of Safeco, concluding that "[w]hen the policy limits had been exhausted by paying such limits plus interest and Court costs [Safeco] had no duty to appeal or to take any further steps with respect to the policy." *Id.* at 728.

On appeal, the Kentucky Supreme Court explained that "some courts permit the insurer to pay the limits of its liability into court and thereafter abstain from further proceedings in the action." *Id.* at 729. The Supreme Court added that such a rule exists where the duty to defend is determined to be indivisible from the obligation to pay, resulting in "an extremely harsh

construction [that] in many instances will, in the course of litigation, leave the insured without adequate or any protection." *Id.*

The Supreme Court then considered the Safeco policy language that provided the insurer "shall defend any suit alleging such damages which are payable under the terms of this policy." *Id.* The Court held that such language means the duty to defend is "determined by the type [sic] coverage for which a premium is paid, and this duty would arise when a claim within the coverage afforded accrues." *Id.* In that case, the duty to defend is not tied to the insurer's liability and cannot be extinguished by the payment of the policy limits. *Id.* at 729-30 (citing *Mead Corp. v. Liberty Mut. Ins. Co.*, 129 S.E.2d 162 (Ga. App. 1962) (holding that "as the agreement to defend was separate from the agreement to indemnify insurer was not relieved of this obligation even after payment of the policy limits," as "the insured not only purchases protection up to the policy limits, but he also pays for and secures protection from the expenses of defense."); *Travelers Indem. Co. v. East*, 240 So.2d 277 (Miss. 1970) (stating that "the defense clause in the policy is considered to be a contractual right of the insured for which he paid a premium . . ..").

Here, Mt. Hawley's duty to defend is not tied to the insurer's liability under the Policy, but is a distinct, bargained-for obligation. The Base Form provides that Mt. Hawley "shall have the right and duty to defend any suit against the **Insured** seeking **Damages** which are payable under the terms of this policy." Policy at 1 of 10. This language, which is almost identical to that at issue in *Ursprung*, means that Mt. Hawley's duty to defend is triggered and continues as long as the Insureds face a claim falling within the scope of the Policy's coverage, as exists here. *Ursprung*, 497 S.W.2d at 729.

-9-

The above conclusion is not altered by the language in the Base Form that suggests the duty to defend and the duty to pay are not separate or that Mt. Hawley is not obligated to maintain its defense after the Policy's liability limits have been tendered.  That is because the alleged "indivisibility" of the duties to pay and defend is not only contrary to the Court's holding in *Ursprung*, it is superseded and negated by the Claims Expense Endorsement, which expressly makes those duties independent by requiring Mt. Hawley to pay claim expenses "in addition to the limits of liability."  Moreover, the purported right to tender simply does not exist under the facts of this case, at least until Insured's liability has been determined, which has not occurred.

Similarly, the purported right to avoid the ongoing duty to defend not only violates *Ursprung*, it contradicts the additional defense benefit created by the Claims Expense Endorsement.  As explained below, if the Policy were interpreted as Mt. Hawley suggests, the insurer could avoid providing the distinct, bargained-for defense benefit by simply tendering its policy limits, rendering that benefit meaningless.  *See* Argument, Section D, infra.  The Policy's unequivocal creation of a defense obligation that is separate from the duty to indemnify means Mt. Hawley must defend the Clontz Action despite its attempted tender, and the insurer cannot rely on contradictory and ambiguous language to avoid that duty.

The long-standing precedent created by the Kentucky Supreme Court in *Ursprung* also is not undermined by the unreported federal trial court case relied upon by Mt. Hawley.  In *Safeco Ins. Co. v. Ritz*, 2006 WL 119991 (E.D. Ky. 2006), the court considered whether Safeco had an obligation to defend its insured against a claim by one individual when the insurer's policy limits had been exhausted by payments made to two other claimants.  Safeco's policy provided:

> We will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident.  We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of

-10-

> liability, we will pay all defense costs we incur.  Our duty to settle
> or defend ends when our limit of liability for this coverage has
> been exhausted.

In concluding Safeco did not have an ongoing duty to defend, the federal court recited the general rule that "an insurer has a duty to defend if there is an allegation which might come within the coverage terms of the insurance policy, but this duty ends once the insurer establishes that the liability is in fact not covered by the policy." *Id.* at *5.  Relying on that rule, the court summarily concluded that "[a]ccordingly, the provision of the policy providing that Safeco's duty to defend ends when the policy limits have been exhausted is valid under Kentucky law."

Nothing in *Ritz* applies here.  First, the policy language in *Ritz* is nothing like that at issue here or under review in *Ursprung*, which provided that the insurer was independently obligated to defend "any suit alleging such damages which are payable under the terms of this policy." *Ursprung*, 497 S.W.2d at 729.  The language at issue in *Ritz* gave the insurer the option to "settle or defend . . . any claim or suit asking for these damages." *Ritz*, 2006 WL 119991 at *5. Moreover, the trial court's decision in *Ritz* was based on the concept that the duty to defend is terminated "once the insurer establishes that the liability is in fact not covered by the policy," *id.* at *5, which goes to the *scope* of a policy's coverage and not the interplay between policy limits and the duty to defend.  There is also nothing in *Ritz* to indicate that the insured specifically elected to have defense costs outside the limits, as is the case here.

Most importantly, *Ritz* did not address whether an insurer had a continuing duty to defend an insured after the insurer tendered its liability limits in connection with that claim.  Rather, *Ritz* considered whether an insurer had a duty to defend an entirely new claim after the insurer's policy limits were exhausted by a settlement made in connection with two unrelated claims,

which is not the case here.  In any event, the *Ritz* court did not even address the long-standing precedent created by *Ursprung*, which is clearly controlling.

Finally, and even if *Ursprung* were not controlling, Mt. Hawley is not permitted to withdraw from defending the Insureds because it has not used the Policy limits to protect them from further liability.  Even those jurisdictions that conclude the duties to defend and indemnify are intertwined, unlike Kentucky, do not allow an insurer to withdraw a defense by paying limits to the court or to the insured because doing so does not protect the insured's interests.  *See* 1 Insurance Claims and Disputes § 4:32, n.4 (6th ed.) (survey of cases).  Because Mt. Hawley has done nothing other than try to protect itself , it is simply not permitted to walk away from its bargained-for duty to defend the Insureds in connection with the Clontz Litigation.

### C.  Mt. Hawley's Questionable Right to Tender and Withdraw Its Defense is Superseded By Bargained-For Policy Endorsements

    1.  <u>Mt. Hawley Does Not Have the Right to Tender Its Limits to the Insureds</u>:

As a threshold matter, *nothing* in the Policy gives Mt. Hawley the right to tender its limits to the Insureds as it has done in this case.  To the contrary, the Policy provides that Mt. Hawley will make payments "on behalf of" the Insureds.  Policy at 1 of 10.  Unlike an indemnity policy that allows an insurer to reimburse the insured directly *or* pay third parties for covered losses, a "pay on behalf of" policy obligates the insurer to make payments to third parties only.  *See* 7A Couch on Insurance § 103:5 n. 1 (citing *Dixie Auto Ins. Co. v. Smith*, 134 S.E.2d 863 (Ga. App. 1964) (explaining that a "pay on behalf of" policy is a contract to pay liabilities and not a contract of indemnity, which requires the insured to first discharge the liability against it.).  As a result, Mt. Hawley had no right to pay the Policy limits to the Insureds or to rely on that payment to withdraw its defense of the Clontz Litigation.

The above is not changed by the Policy's references to a purported right to tender. Section V.B.1 of the Policy's Base Form contemplates a tender "after the entry of [a] judgment," and is clearly not applicable here.  Moreover, Section I.A. of the Base Form generally states that Mt. Hawley has no duty to continue to defend a lawsuit or claim "after the applicable limit of the **Company's** liability has been tendered to the **Insured** or the claimant or exhausted by the payment of judgments, settlements or by **Claims Expenses**."  Nothing in that section, however, explains when the purported right to tender arises.  The Claims Expense Endorsement fails to clarify the issue, as it only refers back to Section I.A.  Nonetheless, because the Policy only authorizes Mt. Hawley to pay "sums which the **Insured** is legally obligated to pay as **Damages . . .,"** any right to tender could only arise *after* the Insureds' liability has been determined, which is consistent with the language in Section V.B.1 and has not yet occurred.

In any event, vague references to a right that does not otherwise exist (i.e., the right to unilaterally tender at any time) cannot create such a right, particularly when doing so would be contrary to the Policy's grant of coverage and a Policy endorsement that makes the duty to defend distinct from the duty to pay.  As a result, the only reasonable interpretation of the Policy is that the purported right to tender either arises only after liability has been established by a judgment or settlement *or* that right is contradicted by the Policy's Insuring Clause and superseded by the Claims Expense Endorsement, as explained below.  Mt. Hawley simply cannot be allowed to rely on vague references, inconsistent policy language and inherent ambiguities to claim a right that does not otherwise exist.

   2.   <u>The Purported Right to Tender is Superseded By Policy Endorsements</u>

Even if Mt. Hawley did have the right in the Base Form to tender the Policy limits to the Insureds, the Claims Expense Endorsement and Consent to Settle Endorsement modified the

-13-

Policy to prevent Mt. Hawley from doing what it is asking this Court to allow.  As a general rule, policy endorsements "supersede any conflicting provisions of the standard policy form to which the endorsement is attached, and such conflicting provisions of the standard form are . . . deemed to be canceled."  *Standard Acc. Ins. Co. v. Perry County Bd. of Ed.*, 72 F. Supp. 142, 147 (E.D. Ky. 1947).  *See also Goodin v. General Acc. Fire & Life Assur. Corp.*, 450 S.W.2d 252, 256 (Ky. 1970), *citing* 1 Couch on Insurance 2d § 4:36 (explaining that an endorsement "should prevail over any conflicting provisions of the policy.").

Here, Mt. Hawley's Base Form references a right to tender limits and withdraw from defending a covered claim.  That arguably made sense, as the Policy was originally drafted to provide a defense inside the limits, and once Mt. Hawley paid those limits there would be no remaining funds to pay defense costs.  The Expense Endorsement and Consent to Settle Endorsement, however, changed the Policy such that Mt. Hawley no longer had the unilateral right to pay claims or discontinue its defense.  Specifically, the Consent to Settle Endorsement provides that Mt. Hawley "will not settle any **Claim** without the consent of the Named Insured." While the endorsement uses the term "settle," that term must be interpreted to mean the resolution of the insurer's liability under the Policy.  Otherwise, Mt. Hawley would be required to have its insureds consent to resolve claims with third parties, but could avoid obtaining that consent by handing its limits to the Insureds.  The absurdity of that result demonstrates that the only reasonable interpretation of the Consent to Settle Endorsement is that Mt. Hawley is not entitled to make *any* payment without the Insureds' consent, which is what it has attempted to do here.

The Claims Expense Endorsement also created the distinct defense obligation that, as a matter of law, continues after the Policy's limits have been paid.  *See Ursprung*, 497 S.W.2d

-14-

726.  That endorsement provides that Mt. Hawley "agrees to pay **Claims Expenses** *in addition to* the limits of liability as specified on the **DECLARATIONS** page." (Emphasis added).  As explained above, the law of Kentucky directs that Mt. Hawley had an independent duty to defend the Insureds in connection with covered claims, and to pay for that defense *even after the Policy's liability limits have been exhausted.*  As a result, the Claims Expense Endorsement contradicts and modifies the Base Form provision that originally allowed the insurer to withdraw from defending once it paid its policy limits.  Any other conclusion would render the words "in addition to" in the endorsement meaningless.

The above conclusion is not changed by the fact that the Claims Expense Endorsement states that nothing set forth therein "shall operate to prevent the **Company** from tendering its limits of liability hereunder . . . and by such action eliminating its responsibility for future **Claims Expenses**."  As explained above, the purported right to tender its limits to the Insureds is limited to those circumstances where the insureds' liability has been established.  It is also contradicted by the insuring agreement's duty to make payments "on behalf of" the Insureds.  Moreover, as a matter of law the insurer is obligated to continue to defend claims even after its limits are paid.  In any event, the law of Kentucky and the endorsement *do* operate to prohibit Mt. Hawley from tendering its limits and avoiding its duty to defend, and Mt. Hawley cannot avoid that result by inserting a statement in the endorsement to the contrary.

### D.  Mt. Hawley's Policy Interpretation Would Render the Policy's Coverage Illusory and Invalid As a Matter of Law

Mt. Hawley's attempt to tender the Policy's limits and withdraw from defending the Insureds would render the coverage provided under the Policy illusory in a number of respects, including with regard to the application and operation of the Policy limit, the treatment of claims

expenses outside of that limit and the prohibition on Mt. Hawley's ability to settle a claim without consent.

The doctrine of illusory coverage "operates to qualify the general rule that courts will enforce an insurance contract as written." *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. App. 2012). The doctrine allows a reviewing court to interpret a policy in favor of the insured where the policy language, "if interpreted as proffered by the insurer, essentially denies the insured most if not all of a promised benefit." *Id.* (citing 4 Bruner & O'Connor Construction Law § 11:34). In other words, where the provisions of a policy are such that they will "obfuscate its purpose," the policy is considered illusory and the offending language is invalid. *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Papa John's International, Inc*., 29 F. Supp. 3d 961, 969-70 (W.D. Ky. 2014).

As explained by the Kentucky Supreme Court, if the insurer's interpretation of its policy results in a grant of coverage that is then taken away, "the coverage bought, paid for and reasonably expected is illusory" and contrary to public policy. *Chaffin v. Kentucky Farm Bureau Ins. Companies*, 789 S.W.2d 754 (Ky. 1990). Quoting *Chaffin*, the court in *National Union* described illusory coverage as "coverage that is *at least implicitly given* under its provisions and then taken away, whether by virtue of a prohibition or exclusion contained in the same policy, or by virtue of a strict legal definition." *National Union* at 970 (emphasis added).

Mt. Hawley relies upon three things to claim a unilateral right to tender its limits and withdraw from defending its Insureds:

- Section I.A. in the Base Form, which states that "the duty to defend and duty to pay are not separate."

- Section I.A. in the Base Form, which states that "the **Company** shall not be obligated to pay any **Claim** or judgment or to defend or to continue to defend any

suit or **Claim** after the applicable limit of the **Company's** liability has been tendered to the **Insured**.**"**; and

- The Claims Expense Endorsement provision that states nothing therein "shall operate to prevent the **Company** from tendering its limits of liability . . . and by such action eliminating its responsibility for future **Claims Expenses**."

As explained above, there is no right to tender, at least until after the Insureds' liability is established, and Mt. Hawley's reliance on the above language is misplaced.  The language quoted in the first bullet point is also irrelevant, as it is part of the Base Form and clearly only applied while Mt. Hawley's obligation to pay defense costs was included in the Policy limits. Once the Claims Expense Endorsement was added to the Policy those duties were expressly separated, as the endorsement created a duty to provide a defense "in addition to" paying the Policy Limits.  Because the endorsement contradicts the aforementioned language in the Base Form, that language is superseded and of no consequence here.

Similarly, the language quoted in the second bullet point was also superseded by the Claims Expense Endorsement.  Once that endorsement amended the Policy to provide that Mt. Hawley would pay defense expenses in addition to the Policy limit there could be no legitimate argument that the duty to defend expired upon payment of the limits.  In other words, the language in Section I.A. may have made sense when a policy limits payment would have exhausted all coverage, but not after the Policy was amended to provide that defense costs were paid outside those limits.

Most troubling here is Mt. Hawley's interpretation of the language in the Claims Expense Endorsement, which the insurer believes gives it the ability to tender its policy limits and eliminate its responsibility for future claims expenses.  That is the epitome of the type of interpretation that Kentucky courts universally reject as illusory.  According to Mt. Hawley, the Claims Expense Endorsement requires the insurer to pay defense costs in addition to the Policy's

-17-

$1,000,000 liability limit, but also preserves the insurer's "right" to unilaterally pay that limit and avoid paying defense costs.  The absurdity of that argument is patent, as it would mean that in every single case where Mt. Hawley believed its policy limits were in jeopardy it could save itself money (to the detriment of its insureds) by tendering those limits.  This is far from a hypothetical, as Mt. Hawley is currently defending multiple claims under the Policy, several of which have the potential to exceed the Policy's limits.  Mt. Hawley should not be allowed to have its cake and eat it too, and the words "in addition to" in the endorsement mean just that – a defense is an additional, distinct obligation.

Mt. Hawley's view of its coverage also undermines one of the key benefits provided by the Claims Expense Endorsement – the preservation of a specific fund to pay third party claims.  Non-eroding professional liability policies like the one at issue here are extremely valuable as they provide substantially greater benefits than an eroding policy.  The bargained-for endorsement provides certainty as to the amount of coverage available to settle claims and shifts the costs associated with their defense to the Mt. Hawley.  If Mt. Hawley's interpretation is accepted it will have *in successive sentences* transformed the policy from eroding to non-eroding then back again, as the Insureds will be required to use the Policy's limits to defend the ongoing litigation.  Mt. Hawley's interpretation would also eviscerate the duty to defend created by the Claims Expense Endorsement, as the Insureds would be forced to use their own funds to defend an otherwise covered claim.  Under either scenario Mt. Hawley's interpretation would impermissibly transform the Policy from one that provides a $1 million liability limit *and* defense costs to one with no defense coverage and a liability limit of something significantly less than $1 million.  There could be no more glaring an example of what *Chaffin* and *National Union* described as "coverage that is at least implicitly given . . . and then taken away."

-18-

### E.  At a Minimum, the Policy is Ambiguous, Creating an Issue of Fact Fatal to Mt. Hawley's Motion

The parties have urged two very different interpretations of the Policy.  Mt. Hawley claims the Policy allowed it to tender its limits and refuse to continue to defend its Insureds.  The "clear" language on which Mt. Hawley relies, however, is contradicted by the endorsements referenced above, which were intended to provide a defense in addition to the Policy's limits and to avoid Mt. Hawley making unilateral payments without the Insureds' consent.  Therefore, at a minimum, the Policy is ambiguous and must be interpreted in the Insureds' favor.

Under the law of Kentucky, the interpretation of an insurance policy is a question of law for the court.  *National Union*, *supra* at 967; *Auto-Owners Ins. Co. v. Goode*, 294 S.W.3d 32, 36 (Ky. Ct. App. Feb. 13, 2009).  In interpreting a policy, the court's "primary objective is to ascertain and to effectuate the intention of the parties to the contract from the contract itself." *National Union* at 968, *quoting Logan Fabricom, Inc. v. AOP P'Ship, LLP*, 2006 WL 3759412, *2 (Ky. Ct. App. December 22, 2006).  "In the absence of ambiguity, a written instrument will be enforced strictly according to its terms and a court will interpret a contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence."  *Id*., *quoting Frear v. P.T.A. Indus. Inc*., 103 S.W.3d 99, 106 (Ky. 2003).

However, "if the contract language is ambiguous it must be liberally construed to resolve any doubts in favor of the insured."  *Id*., *quoting Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984).  The interpretation most favorable to the insured must prevail.  *State Auto Mut. Ins. Co. v. Ellis*, 700 S.W.2d 801 (Ky. App. 1985).  A contract is ambiguous "if a reasonable person would find it susceptible to different or inconsistent interpretations."  *Id*., *quoting Cantrell Supply, Inc. v. Liberty Mut. Ins. Co*., 94 S.W.3d 381, 385 (Ky. Ct. App. 2002).  If the reviewing court determines policy language to be ambiguous, "it may use traditional methods of contract

interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence." *Bluegrass Marine, Inc. v. Zurich American Insurance Co.*, 87 Fed. Appx. 493, *3 (6th Cir. 2003).[7]  Some of the extrinsic evidence to be considered includes the "circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished and the conduct of the parties." *Cantrell Supply, supra* at 385.  "Once a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract become subject to resolution by the factfinder." *Id.* at 385.  Once issues of fact become apparent, a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) cannot be sustained.  *J.P. Morgan Chase Bank N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

In this case, Mt. Hawley claims that the Policy language at issue clearly allowed it to tender its limits and refuse to continue to defend its Insureds.  Although there is nothing "clear" about that language, it is also undoubtedly contradicted by Policy endorsements that modify the Base Form and evidence the Insureds' reasonable expectation of $1 million in limits available to pay third party claims *and* have Mt. Hawley defend those claims *in addition to* those limits.

As explained above, the Policy originally gave Mt. Hawley the unilateral right to pay claims and to use its limits to pay claims and defense costs.  Each of those things was modified

---

[7]"An essential tool in deciding whether an insurance policy is ambiguous . . . is the so-called doctrine of reasonable expectations."  *Bidwell v. Shelter Mut. Ins. Co.*, 367 S.W.3d 585 (Ky. 2012) (citations omitted).  The doctrine of reasonable expectations provides that "the insured is entitled to all the coverage he may reasonably expect to be provided under the policy.  Only an unequivocally conspicuous, plain and clear manifestation of the [insurer's] intent to exclude coverage will defeat that expectation."  *Simon v. Continental Ins. Co.*, 724 S.W.2d 210, 212-13 (Ky. 1986).  The insured's reasonable expectations are determined by "construing the policy language as a layman would understand it."  *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. App. 2012).  The doctrine is therefore used "to circumvent the technical, legalistic and complex contract terms which limit benefits to the insured."  *Id.*

by endorsement – one that gave the Named Insured the right to "veto" a proposed payment and the other that required Mt. Hawley to pay for the defense costs in addition to the Policy's liability limits. Despite this, Mt. Hawley points to Policy language that it believes allows it to unilaterally hand its limits over to the Insureds and avoid its duty to defend. In other words, depending on the specific language of the Policy being reviewed:

> Mt. Hawley is prohibited from making unilateral payments to pay claims (Consent to Settle Endorsement);
>
> -but-
>
> Mt. Hawley can unilaterally make payments to the Insureds (Policy, Section I.A.; Claims Expense Endorsement)
>
> -and-
>
> Mt. Hawley has a duty to pay defense expenses in addition to its duty to pay third-party claims (Claims Expense Endorsement)
>
> -but-
>
> Mt. Hawley can avoid that duty by paying its limits.

The ambiguities in the policy Mt. Hawley drafted are obvious. The only reasonable interpretation of the Policy that fulfills the Insureds' reasonable expectations, *as evidenced by the aforementioned endorsements*, is that the Named Insured retains the right to consent to Policy payments and to have defense costs paid in addition to the Policy limits, at least until liability is established. To conclude otherwise would mean that the Insureds bargained for benefits that may or may not exist at Mt. Hawley's whim, which is not how insurance coverage works.

### F. Waiver and Estoppel Preclude Mt. Hawley from Withdrawing its Defense

Irrespective of the reasons explained above why Mt. Hawley's motion should be denied, Mt. Hawley is also precluded from withdrawing its defense based on waiver and estoppel. It is well established that where an insurer provides an unconditional defense of an action against its

-21-

insured without timely issuing a reservation of rights, a waiver of the policy provisions has occurred and the insurer is estopped to disclaim liability. *Auto-Owners Ins. Co. v. Randall Smith Mobile Homes Corp.,* 2004 WL 2483858, *3 (Ky. Ct. App. Nov. 5, 2004) (carrier that provided defense without reservation of rights for eighteen months barred from denying coverage). *See also American Cas. Co. of Reading, PA v. Shely*, 234 S.W.2d 303 (Ky. 1950) (carrier that provided defense without reserving its rights for approximately eleven months barred from denying coverage); *Hood v. Coldway Carriers, Inc.*, 405 S.W.2d 672 (Ky. Ct. App. Oct. 15, 1965);(carrier not entitled to summary judgment regarding policy coverage where it provided defense without first reserving its rights); *Ohio Cas. Ins. Co. v. Wellington Place Council of Co-Owners Homeowners Association, Inc.*, 2014 WL 97395 (Ky. Ct. App. Jan. 10, 2014) (waiver and estoppel barred carrier from asserting coverage defenses where it provided a defense for seventeen months without issuing reservation of rights).

To establish an estoppel, "the person claiming it must have been prejudiced by the action of the person against whom it is asserted." *Auto-Owners* at *4, *quoting American Casualty* at 305. "Where an insurance company undertakes the defense of an accident case, the loss of the right by the insured to control and manage the case is itself a prejudice." *Id.*, *quoting American Casualty* at 84.

Here, Mt. Hawley did not reserve its rights until months after it accepted the Insureds' defense. The Insureds therefore handed the defense of the Clontz Litigation over to Mt. Hawley and relied on its claims handling expertise to direct the defense and evaluation of the claims being made against them. Until Mt. Hawley unilaterally decided it would no longer defend them, the Insureds allowed Mt. Hawley to be responsible for protecting their financial and reputational interests. If the Insureds had any sense during that period that Mt. Hawley would, in

the future, withdraw its defense based on the insurer's contorted view of the Policy, they undoubtedly would have secured private counsel or at a minimum been more actively involved in their own defense.  That is even more likely given the fact that Mt. Hawley's unilateral action not only took away the defense, but also reduced the value of the Policy's $1 million liability limit.  As a result, Mt. Hawley should be prohibited by waiver and estoppel from withdrawing its defense.

## V.  CONCLUSION

For the foregoing reasons, the Court should deny Mt. Hawley's motion, construe the terms of the Policy in favor of coverage, or alternatively, allow the parties to develop sufficient evidence to demonstrate the Policy's intent to the finder of fact.

/s/ Anthony Sammons
Anthony Sammons
Dinsmore & Shohl, LLP
Lexington Financial Center
250 West Main Street
Suite 1400
Lexington, KY  40507
859-244-7134
Anthony.sammons@dinsmore.com

Joel Hopkins
Joseph C. Monahan
Amy L. Piccola
Saul Ewing LLP
2 North Second Street, 7th Fl.
Harrisburg, PA  17101
717-257-7525
*Pro Hac Vice Admission Pending*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of November, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Robert L. Steinmetz
Gwin Steinmetz & Baird, PLLC
401 West Main Street, Suite 1000
Louisville, KY 40202
*Counsel for Mt. Hawley Insurance Company*

/s/ Anthony Sammons_____
Counsel for Defendant