Policy No: MME0000012

**Mt. Hawley Insurance Company**
Peoria, Illinois 61615

# NOTICE TO POLICYHOLDERS

## REGARDING THE UNITED STATES TREASURY DEPARTMENT – OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

This Policyholder Notice does not provide coverage nor can it be construed to replace any provisions of your policy. Please read your policy carefully to determine your rights, duties, and what is and what is not covered by your policy. This Notice should only be used to provide information concerning the possible impact of your insurance coverage as it relates to directives issued by OFAC.

**PLEASE READ THIS NOTICE CAREFULLY.**

OFAC administers and enforces economic and trade sanctions and places restrictions on certain transactions. OFAC acts pursuant to Executive Orders of the President of the United States and specific legislation. OFAC has identified and named numerous foreign agents, front organizations, terrorists, terrorist organizations, and narcotics traffickers, among others, as "Specially Designated Nationals and Blocked Persons." The complete list can be found on the United States Treasury website – http://www.treas.gov/ofac.

Various trade or economic sanctions and other laws or regulations prohibit us from providing insurance in certain circumstances. In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance contract is considered a blocked or frozen contract and will be considered null and void. When an insurance policy is considered to be a blocked or frozen contract, all provisions of this insurance will be immediately subject to OFAC, and neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments may also apply.



Policy No. MME0000012

## DECLARATIONS

### MT. HAWLEY INSURANCE COMPANY
### (herein called the Company)

Medical Professional Liability Policy

THIS IS A CLAIMS-MADE POLICY

Coverage under this policy is limited to **Claims** first made arising out of the rendering of or failure to render **Medical Professional Services** subsequent to the **Retroactive Date** and prior to the **Expiration Date** stated in the policy, and reported to the **Company** in writing during the policy period or any applicable **Extended Reporting Period**.

Words and phrases that appear in bold type have special meaning under this policy. Please refer to Article VI. DEFINITIONS of the policy.

| | | |
|---|---|---|
| ITEM 1. | Named Insured: | |
| | Marshall Medical Management, LLC | |
| ITEM 2. | Named Insured's Mailing Address: | |
| | 1792 Alysheba Way, Suite 150 & 170<br>Lexington, KY 40509 | |
| ITEM 3. | Medical Specialty/Business Description: | |
| | Emergency Medicine | |
| ITEM 4. | Policy Period: | |
| | From October 1, 2013 (**"Inception Date"**) To October 1, 2014 (**"Expiration Date"**)<br>at 12:01 A.M. Standard Time at the Named Insured's mailing address shown above. | |
| ITEM 5. | Retroactive Date: | |
| | September 1, 2003 and as per attached schedules | |
| ITEM 6. | Limits of Liability: | |
| | As per Endorsement No. 1<br>(Exclusive of **Claims Expense**) | |
| ITEM 7. | Deductible: | |
| | $100,000 Per **Loss Event** / $400,000 Aggregate<br>(Applicable to **Indemnity** and **Claims Expense** combined) | |
| ITEM 8. | Premium Payable to Insurer:     $1,123,653<br>     Subject to a 25% minimum earned charge in the event of cancellation by the Named Insured. | |

MML 100nf (05/13)                                                                 Page 1 of 2

Policy No. MME0000012

ITEM 9.       Company Address:

              Mt. Hawley Insurance Company
              9025 North Lindbergh Drive
              Peoria, IL  61615

ITEM 10.      Agent:

              AB Risk Specialists, Inc.
              931 Tullis Road
              Lawrenceville, GA 30043

ITEM 11.      Forms and Endorsements made a part of this policy at time of issuance:

              RIL 099 (01/01)       Service of Suit
              MML 101i (05/13)      Medical Professional Liability Insurance - Claims Made Basis
              MML 304 (10/12)       Broadened Claim Definition Endorsement - 90 Days
              MML 307 (10/12)       Cancellation Amendatory Endorsement - 90 Days
              MML 308 (10/12)       Claims Expense in Addition to the Limits of Liability Endorsement
              MML 315 (10/12)       Deductible Endorsement
              MML 317 (10/12)       Exclusion of Specified Locations, Medical Specialties, Medical Professionals or Loss Events
              MML 324 (10/12)       Extended Reporting Period Endorsement
              MML 341 (10/12)       Medical Director for the Named Insured Coverage Endorsement
              MML 359 (10/12)       Premium Audit Endorsement
              MML 362 (10/12)       Scheduled Location Coverage Limitation Endorsement
              MML 366 (10/12)       Administrative Hearing Coverage Endorsement
              MML 2100 (10/12)      General Change Endorsement (Named Insured)
              MML 2100 (10/12)      General Change Endorsement (Amend Sexual Abuse Exclusion with Sublimit)
              MML 2100 (10/12)      General Change Endorsement (Consent to Settle)
              MML 2100 (10/12)      General Change Endorsement (Special Event)
              MML 2100 (10/12)      General Change Endorsement (Limits of Liability)

ITEM 12.      All **Claims** must be reported to:

              Attn: Claim Department
              Mt. Hawley Insurance Company
              9025 North Lindbergh Drive
              Peoria, IL  61615-1431
              Fax: 1-866-692-6796
              E-Mail: new.claim@rlicorp.com

Countersigned: _____September 26, 2013_____    By: _____
                           Date                                      James R. Brooks

MML 100nf (05/13)                                                              Page 2 of 2

Policy No: MME0000012

**Mt. Hawley Insurance Company**
Peoria, Illinois 61615

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT ENDORSEMENT

It is understood and agreed that in the event of the failure of the Company to pay any amount claimed to be due here-under, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America. The foregoing shall not constitute a waiver of the right of the Company to remove, remand or transfer such suit to any other court of competent jurisdiction in accordance with the applicable statutes of the state or United States pertinent hereto. In any suit instituted against them upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

It is further agreed that service of process in such suit may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance.

The Company hereby designates Michael J. Stone, President,

**Mt. Hawley Insurance Company**

9025 N. Lindbergh Drive, Peoria, Illinois 61615 as the person to whom the said Superintendent, Commissioner, or Director of Insurance is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this contract of insurance arises.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**MEDICAL PROFESSIONAL LIABILITY INSURANCE**
**CLAIMS-MADE BASIS**

Coverage under this insurance policy is limited to **Claims** (a) first made against the **Insured** for the rendering of or failure to render **Medical Professional Services** subsequent to the **Retroactive Date** and prior to the **Expiration Date** stated in the policy, and (b) reported to the **Company** in writing during the policy period or any applicable **Extended Reporting Period**.

I.    COVERAGE

    A.    Insuring Clause

        The **Company**, subject to the exclusions, limits of liability, and other terms and conditions hereof, will pay on behalf of the **Insured** those sums which the **Insured** is legally obligated to pay as **Damages** because of a **Loss Event** within the **Policy Territory**, to which this insurance applies, subsequent to the **Retroactive Date** and prior to the **Expiration Date** and for which a **Claim** is first made in writing during the policy period and reported to the **Company** in writing during the policy period or any applicable **Extended Reporting Period**.

        With respect to the insurance provided hereunder, the duty to defend and duty to pay are not separate. The **Company** shall have the right and duty to defend any suit against the **Insured** seeking **Damages** which are payable under the terms of this policy, even if the allegations of the suit are groundless, false or fraudulent. It is further agreed that the **Company** may make such investigations as it deems expedient and may settle any **Claim**, but the **Company** shall not be obligated to pay any **Claim** or judgment or to defend or to continue to defend any suit or **Claim** after the applicable limit of the **Company's** liability has been tendered to the **Insured** or the claimant or exhausted by the payment of judgments, settlements or by **Claims Expenses**.

    B.    Exclusions

        This insurance does not provide coverage for or apply:

        1.    To liability of an **Insured** as a result of **Injury** to an employee of an **Insured** arising out of and in the course of employment by the **Insured**;

        2.    To any obligation for which any **Insured** or any carrier as insurer may be held liable under any Workers' Compensation, Unemployment Compensation or Disability Benefits Law, the Employee Retirement Income Security Act of 1974, as amended and in effect from time to time, or any rule or regulation promulgated thereunder, or under any similar law or any liability covered under any automobile, fire, general liability or other similar policy;

        3.    To liability of an **Insured** in the capacity of a proprietor, medical director, hospital administrator, superintendent, officer, shareholder, agent or member of the board of directors, trustees or governors of any hospital, sanitarium, clinic with bed and board facilities, nursing home, laboratory or other business enterprise;

        4.    To liability of an **Insured** arising out of any partnership, corporation or association of which the **Insured** is an owner or shareholder or in which the **Insured** has any financial interest, unless specifically named in this policy;

MML 101i (05/13)                                                                                   Page 1 of 10

5.      To liability of an **Insured** due to war, whether or not declared, civil war, insurrection, rebellion, act of terrorism or revolution or to any act or condition incident to any of the foregoing;

6.      To liability of an **Insured** arising out of the performance by any **Insured** of any willful act or omission of any **Insured**, any employee of an **Insured** or any person for whom an **Insured** is legally responsible, that was either intended to or foreseeably resulted in death or **Injury**;

7.      To liability of an **Insured** arising out of any unlawful, dishonest or criminal act committed by any **Insured**, any employee of an **Insured** or any person for whom an **Insured** is legally responsible, that was either intended to or foreseeably resulted in death or **Injury**, including, without limitation, any liability arising out of the Racketeer Influenced and Corrupt Organizations Act;

8.      To liability of an **Insured** arising out of (i) false arrest, detention or imprisonment or libel or slander or the publication or utterance of defamatory or disparaging material concerning any person or organization or products or services, or (ii) violation of an individual's right of privacy, or discrimination, unfair competition, wrongful discharge from employment or contract of an employee or other person, or (iii) wrongful entry or eviction made by or at the direction of the Named Insured or Additional Named Insured;

9.      To liability of an **Insured** arising out of the transfer of a patient allegedly in violation of any statute or regulation prohibiting certain patient transfers or regulating the circumstances under which patient transfers may be effected;

10.     To any liability of an **Insured** arising out of sexual intimacy, sexual molestation, sexual harassment, sexual exploitation, or sexual assault of any kind;

11.     To any liability of an **Insured** arising out of services performed while under the influence of alcohol, narcotics, hallucinogenic agents or which results from any other substance abuse;

12.     To liability of an **Insured** arising out of the unauthorized use or disclosure of medical records, financial information or other confidential patient information by any **Insured**, any employee of an **Insured**, or any person for whom an **Insured** is legally responsible;

13.     To liability of an **Insured** for punitive damages or **Damages** in excess of compensatory damages, including, without limitation, fines, penalties, treble damages, any multiple compensatory damages, and the like;

14.     To liability of an **Insured** for (i) a **Claim** arising out of the rendering of or failure to render **Medical Professional Services** prior to the **Retroactive Date** shown in the Declarations or (ii) a **Claim** which was first brought to the attention of the **Insured** prior to the first date that the Named Insured had current, continuous coverage by the **Company**;

15.     To liability of an **Insured** assumed or arising under an agreement or a contract; and

16.     A.      To damage

        (1)     with respect to which an **Insured** under this policy is also insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2)    arising out of the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (b) the **Insured** is, or had this policy not been issued would be, entitled to **Indemnity** from the United States of America, or agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.    To expenses incurred with respect to damage arising out of the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

C.    To damage arising out of the **hazardous properties** of **nuclear material**, if,

(1)    the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom; or

(2)    the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

(3)    the Damage arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

D.    As used in this exclusion:

(1)    "**hazardous properties**" include radioactive, toxic or explosive properties; "**nuclear material**" means **source material**, **special nuclear material** or **by-product material**;

(2)    "**source material**", "**special nuclear material**", and "**by-product material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(3)    "**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

(4)    "**waste**" means any **waste** material (1) containing **by-product material** other than the tailings or **waste**s produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and (2) arising out of the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof;

(5)    "**nuclear facility**" means:

(a)    any **nuclear reactor**,

MML 101i (05/13)                                                      Page 3 of 10

(b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**,

(c)    any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or, more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(6)    **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(7)    **"property damage"** includes all forms of radioactive contamination of property.

## II.   WHEN A **CLAIM** IS TO BE CONSIDERED AS FIRST MADE

### A.   A **Claim** Against an **Insured**

For purposes of this policy, a **Claim** against an **Insured** is first made when the Named Insured or Additional Named Insured receives during the policy period (i) a written demand for money or services from a claimant or claimant's attorney or agent or (ii) service of process of a suit or other proceeding seeking **Damages** or services, as a result of an alleged **Loss Event** to which this policy applies.

### B.   A **Claim** to which this Policy Applies

1.    This policy shall cover **Claims** arising from an alleged **Loss Event** made against an **Insured** in writing and reported to the **Company** in writing by a Named Insured or Additional Named Insured as provided by this policy.

2.    A **Claim** shall be considered reported to the **Company** on the date when the **Company** first receives **Written Notice** from a Named Insured or Additional Named Insured that a **Claim** in writing has been made against an **Insured** as a result of an alleged **Loss Event** to which this policy applies.

3.    This policy does not apply to reports of incidents to the **Company** made by an **Insured**, whether or not made as part of a risk management or claims management program or procedures of an **Insured**, and such reports do not constitute a **Claim** first made against an **Insured** during the policy period and reported to the **Company** during the policy period.

III.   INVESTIGATION, DEFENSE AND SETTLEMENT

A.   <u>Participation by the **Company**</u>.   The **Company** shall have the right to negotiate, investigate, defend or appeal any **Claim** or proceeding which, in the opinion of the **Company**, is or may be **Insured** under this policy. Each **Insured** shall fully cooperate in all matters pertaining to such **Claim** or proceeding.

B.   <u>Settlement</u>.   The **Company** shall have the right to settle any **Claim** as it deems necessary.

IV.   PERSONS INSURED

Each of the following is an **Insured** under this policy to the extent set forth below:

A.   <u>Named Insured</u>.   The Named Insured and any member, partner, officer, director or shareholder thereof while acting within the scope of their duties in providing **Medical Professional Services** for the Named Insured.

B.   <u>Additional Named Insured</u>.   Any physician, nurse, assistant or technician, while providing **Medical Professional Services** under a contract of employment or service contract with the Named Insured, but only while acting within the scope of any contract or employment with the Named Insured and under the control of or of direct benefit to the Named Insured at the time of a **Loss Event**.

C.   <u>Additional Insured</u>.   Any hospital, person or organization to whom or to which the Named Insured is obligated by virtue of a written contract to provide insurance or **Indemnity** such as is afforded by this policy, but only with respect to **Medical Professional Services** performed by the Named Insured or an Additional Named Insured.

Notwithstanding the above, this provision does not provide insurance or **Indemnity** or **Claims Expense** to any hospital, person or organization to whom or to which the Named Insured is or may be obligated by virtue of a written contract with respect to **Damages** arising out of the rendering or failure to render **Medical Professional Services** by any hospital, its agents or employees.

V.   LIMITS OF LIABILITY

A.   The limits of liability stated in the Declarations include all payments on behalf of an **Insured** for both **Indemnity** and **Claims Expense**.

Regardless of the number of (i) **Insureds** under this policy, (ii) persons who sustain **Injury** or **Damage** or (iii) **Claims** first made or suits brought, the **Company's** liability is limited and shall not exceed the limits of liability for **Indemnity** and **Claims Expense** stated in the Declarations on the date the **Claim** is first reported to the **Company**.

B.   The **Claims Expense** includes, but is not limited to, the following types of expenses:

1.   Defense costs and expenses incurred by the **Company**, including attorney's fees, all costs taxed against an **Insured** in any suit defended by the **Company** and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the **Company** has paid or tendered or deposited in court that part of the judgment which does not exceed the **Company's** limit of liability thereon;

2.  Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any suit for an amount not in excess of the applicable limit of liability of this policy, but the **Company** shall have no obligation to apply for or furnish any such bonds;

3.  Reasonable expenses incurred by an agent of an **Insured** at the **Company's** request in assisting the **Company** in the investigation or defense of any **Claim**;

4.  All other fees, costs and expenses resulting from the investigation, adjustment or defense of a **Claim** related to a **Loss Event** if it is incurred by the **Company** or its agent or by an **Insured** with the **Company's** consent;

    **Claims Expense** does not include:

    a.  any **Claims Expenses** with respect to a **Loss Event** after the limits of liability as stated in the Declarations are exhausted by payment of **Indemnity** or **Claims Expenses** or both;

    b.  any salary charges of regular employees or of officials of an **Insured** or the **Company**, or;

    c.  any supervisory counsel retained by the **Company**.

C.  Regardless of (i) the number of **Claims** which are made arising out of, resulting from, or related to a **Loss Event**, or (ii) whether one or more such **Claims** are made during one or more policy years or (iii) the number of **Insureds** subject to **Claims** (1) only one per **Loss Event** limit of liability shall apply and (2) once a **Claim** has been made under this policy or a successor or predecessor policy, and reported to the **Company** as provided herein or another insurer as provided by another policy, whether or not such policy was issued by the **Company**, only the policy against which a **Claim** was first made shall be available to pay such **Claim** and no other policy shall apply to such **Loss Event**.

VI.  <u>DEFINITIONS</u>

When used in this policy:

A.  "**Claim**" means the filing of a lawsuit against an **Insured**, **Written Notice** of intent to file a lawsuit or to arbitrate against an **Insured**, or a written demand for money or services delivered to an **Insured** with respect to **Injury** suffered as a result of a **Loss Event** subsequent to the **Retroactive Date** and prior to the **Expiration Date** of this policy and which has been reported to the **Company** in writing prior to the **Expiration Date** or the expiration of an applicable **Extended Reporting Period**.

B.  "**Claims Expense**" has the meaning given it by Article V., B. of this policy.

C.  "**Damages**" means all compensatory monetary sums which an **Insured** is obligated to pay.

D.  "**Extended Reporting Period**" means the period of time set forth in an endorsement hereto entitling an **Insured** to report in writing to the **Company Claims** under this policy for a period after the **Expiration Date**.

E.   "**Expiration Date**" means the date this policy expires as stated in the Declarations or its earlier termination date or cancellation date, if any.

F.   "**Inception Date**" means the date this policy becomes effective as stated in the Declarations.

G.   "**Indemnity**" means those compensatory sums which an **Insured** is or may be legally obligated to pay to an injured party or their heirs, successors or legal representatives as a result of, arising out of, or with respect to a **Loss Event**.

H.   "**Injury**" means bodily injury, sickness or disease or other injury sustained by any person, their spouse, children or others including mental anguish, loss of income or death resulting therefrom, from an act or omission or series of acts or omissions of an **Insured** in the rendering of, or failing to render, **Medical Professional Services.**

I.   "**Insured**" means any person or organization qualifying as an **Insured** pursuant to Article IV above.

J.   "**Loss Event**" means all **Damages** to all persons for **Injuries** to one patient and his or her spouse or children or any other person, arising out of the rendering of or failure to render, **Medical Professional Services** to one patient, irrespective of the number of **Medical Professional Services** or **Insureds** involved or the period of time during which such **Medical Professional Services** are rendered or failed to be rendered. One **Loss Event** may include, but is not limited to, the administration of, or failure to administer, one or more treatments, procedures, tests, drugs, medicines or care by one or more **Insureds** over a period of time which may begin during one policy period and continue beyond into one or more other policy periods.

K.   "**Medical Professional Services**" means services directly related to the profession of the practice of medicine.

L.   "**Policy Territory**" means the United States of America, its territories or possessions.

M.   "**Reporting Period**" means the period of time stated in the Declarations as beginning with the **Inception Date** of this policy and ending on the **Expiration Date,** except as extended for an additional limited reporting period or an additional **Extended Reporting Period** option granted by an endorsement to this policy.

N.   "**Retroactive Date**" means the date stated in the Declarations as the date before which no coverage is afforded by this policy.

O.   "**Written Notice**" means a notice in writing delivered to the **Company** by a Named Insured or Additional Named Insured complying with the requirements of Article VII., B. below.

VII.   CONDITIONS

A.   Inspection and Audit

1.   The **Company** shall be permitted, but not obligated, to inspect the Named Insured's property and operations at any time. Neither the **Company's** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of any **Insured** to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

2. The **Company** may examine and audit the books and records of an **Insured** at any time during the policy period and extensions thereof, and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

B. **Insured's Duties in the Event of Claim or Suit**

Each **Insured** must comply with each of the following conditions:

1. In the event of a **Claim**, **Written Notice** thereof shall be given to the **Company** as required by this policy as soon as practicable and, in any event, before the **Expiration Date** or the expiration of any **Extended Reporting Period**. All notices must be in writing and addressed to the **Company**. Proper notice must contain particulars of an alleged **Loss Event** sufficient to identify the **Insured**(s) and reasonably obtainable information with respect to the time and date, place and circumstances of the alleged **Loss Event**, the name of the claimant or claimants, the type of **Medical Professional Services** rendered, the **Injury** alleged to be suffered and the names and addresses of the complainant and of any potential witnesses.

2. If suit is brought against an **Insured**, the **Insured** shall immediately forward to the **Company** a complete copy of every demand, notice, summons or other process received individually or through a representative, whether or not the suit involves or is likely to involve the coverage afforded by this policy.

3. Each **Insured** shall cooperate with the **Company**, and upon the **Company's** request, assist in making settlements, in the conduct of suit and in enforcing any right of contribution or **Indemnity** against any person or organization who may be liable to an **Insured** because of **Injury** or **Damage** with respect to which insurance is or may be afforded under this policy. Each **Insured** shall attend all hearings and trials and assist in securing and giving evidence and obtaining witnesses.

4. No **Insured** shall, except at its own cost and expense, voluntarily make any payment, assume any obligation, admit any liability or pay any expense with respect to any alleged **Loss Event** without the prior written consent of the **Company**; and, if any **Insured** does any of the foregoing, such **Insured** shall not be reimbursed for such payments under this policy. In the event that an **Insured** makes any such payments, the policy may not cover any **Claim** related to such alleged **Loss Event**.

5. Each **Insured** shall at all times maintain accurate descriptive records of all **Medical Professional Services** rendered, which records shall be available to the **Company** as they relate to any **Claim** under this policy. Coverage provided under this policy SHALL be VOIDED if an **Insured** or any person under the direction of an **Insured** either alters or amends the medical records or otherwise interferes in any manner with the **Company's** ability to defend a **Claim** or suit.

C. **Action Against Company By A Third Party**

1. No action shall lie against the **Company** by an **Insured** unless, as a condition precedent, there has been full compliance with all of the terms of this policy by the **Insured**, nor until the amount of the **Insured's** obligation to pay has been finally determined, either by judgment against such **Insured** after actual trial, or by written agreement of such **Insured**, the claimant and the **Company**. Any person or organization, or his legal representative, who has secured such a judgment or written agreement shall thereafter be entitled to recover under this policy to the extent, but only to the extent (and subject to the limits), of the insurance afforded by this policy.

2.   No person or organization shall have any right under this policy to join the **Company** as a third party to take any action against the **Insured** to determine the liability of the **Insured**, nor shall the **Company** be impleaded by any **Insured** or its legal representative. Bankruptcy or insolvency of an **Insured** or its estate shall not relieve the **Company** of any of its obligations hereunder.

D.   Other Insurance

1.   This insurance is excess over any other valid and collectable insurance available to each **Insured** with respect to a **Loss Event** covered by this policy. This insurance is excess whether such other insurance is stated to be primary, contributing, contingent, or otherwise   This insurance shall be primary, however, with respect to insurance for Additional Insureds that the **Insured** is required to provide pursuant to a written contact to provide insurance such as is afforded by this policy, but only with respect to **Medical Professional Services** performed by or on behalf of the Named Insured and/or Additional Named Insured as provided for by this policy. Amounts collectable under a self-insured trust plan or other self-insured plan shall be considered Other Insurance for purposes of this policy.

2.   This Article VII., D. does not apply to excess insurance written specifically to be in excess of this policy. Nothing herein shall be construed to make this policy subject to terms, conditions and limitations of any other insurance.

E.   Subrogation

In the event of any payment under this policy with respect to a **Loss Event**, the **Company** shall be subrogated to all the rights of recovery of an **Insured** against any person or organization, and each **Insured** shall execute and deliver instruments and papers and do whatever is necessary to secure these rights of the **Company**. No **Insured** shall do any act or thing after loss to prejudice such rights. Any amount recovered shall be apportioned as follows: Any person or organization (including an **Insured**) who has paid an amount in excess of the limit of liability hereunder shall be first reimbursed to the extent of such actual payment; the **Company** shall next be reimbursed to the extent of its actual payment; any balance remaining in the amount of recovery shall be paid to the appropriate **Insured**. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the **Company**, it shall bear the expenses thereof.

F.   Assignment

Assignment of interest under this policy shall not bind the **Company** unless its consent is endorsed hereon.

G.   Cancellation

1.   The Named Insured shown on the Declarations may cancel this policy by mailing or delivering advance written notice of intent to cancel.

2.   The **Company** may cancel this policy by mailing or delivering to the Named Insured written notice of intent to cancel:

a.   Ten (10) days before the effective date of cancellation, if the **Company** cancels for non-payment of premium or non-payment of deductible amounts, or;

      b.      Thirty (30) days before the effective date of cancellation, if the **Company** cancels for any other reason.

3.      The **Company** will make or deliver its notice of cancellation to the Named Insured's last mailing address known to the **Company**.

4.      The notice of cancellation will state the effective date of cancellation. The policy will end on that date, which shall be and become the **Expiration Date** of this policy.

5.      If this policy is cancelled, the **Company** will send the Named Insured any premium refund due. If the **Company** cancels, any refund will be pro rata. If the Named Insured cancels, the refund will be less than pro rata. Cancellation will be effective even if the refund has not been received.

6.      If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

H.      <u>Premium</u>

The Named Insured shown on the Declarations:

1.      Is responsible for the payment of all premiums and deductibles, and

2.      If the premium is not financed, will be the payee for any return premium.

3.      If the premium is financed, the Named Insured authorizes the **Company** to pay any return premium to the premium finance **Company**.

I.      <u>Agency of Named Insured</u>

By acceptance of this policy, each Named Insured agrees to act on behalf of all **Insureds** with respect to the giving and receiving of notices to and from the **Company** as provided herein with respect to the exercise of any **Extended Reporting Period**; the cancellation of this policy in whole or in part; the payment of premiums and deductibles when due; and the receiving of any return premiums that may become due under this policy. In addition, all **Insureds** hereby agree that each Named Insured shall have authority to act on their behalf.

J.      <u>Declarations and Endorsements</u>

By acceptance of this policy, the Named Insured agrees that (i) the statements contained in the Declarations and any endorsements attached to this policy, and any statements made in any applications, surveys, audits or other data supplied to the **Company** by the Named Insured, and upon which the **Company** relied in issuing this policy, are its agreements, representations and warranties and are true and correct; (ii) this policy is issued in reliance upon the truth of such statements, agreements, representations and warranties, and such statements, agreements, representations and warranties were material inducements to the issuance of the policy by the **Company**; (iii) the falsity or material inaccuracy of such statements, agreements, representations and warranties may render void the coverage afforded by the policy; (iv) failure of the Named Insured to notify the **Company** of material changes in their structure or operations may render void the coverage afforded by the policy; and (v) this policy and the Declarations and endorsements attached hereto, embody all agreements existing between all **Insureds** and any agent and the **Company**.

Policy No. MME0000012

## BROADENED CLAIM DEFINITION ENDORSEMENT – 90 DAYS

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that Article II. <u>WHEN A **CLAIM** IS TO BE CONSIDERED AS FIRST MADE</u> is deleted in its entirety and replaced by the following:

II.     <u>WHEN A **CLAIM** IS TO BE CONSIDERED AS FIRST MADE</u>

    A.     <u>A **Claim** Against an **Insured**</u>

        For purposes of this policy, a **Claim** against an **Insured** is first made when the Named Insured or Additional Named Insured receives during the policy period (i) a written demand for money or services from a claimant or claimant's attorney or agent or (ii) service of process of a suit or other proceeding seeking **Damages** or services, as a result of an alleged **Loss Event** to which this policy applies, or (iii) when the Named Insured or Additional Named Insured becomes aware of a **Loss Event** to which this policy applies.

    B.     <u>A **Claim** to which this Policy Applies</u>

        1.     This policy shall cover **Claims** arising from an alleged **Loss Event** made against an **Insured** and reported to the **Company** in writing by a Named Insured or Additional Named Insured as provided by this policy.

        2.     A **Claim** shall be considered reported to the **Company** on the date when the **Company** first receives **Written Notice** from a Named Insured or Additional Named Insured that a **Claim** has been made against an **Insured** as a result of an alleged **Loss Event** to which this policy applies.

        3.     This policy does not apply to reports of incidents to the **Company** made by an **Insured** as part of a risk management program or procedures of an **Insured**, and such reports do not constitute a **Claim** first made against an **Insured** during the policy period and reported to the **Company** during the policy period.

It is further agreed that Article VI. <u>DEFINITIONS</u>, Section A. is amended as follows:

VI.     <u>DEFINITIONS</u>

    A.     **"Claim"** means:

        1.     the filing of a lawsuit against an **Insured**, and/or

        2.     **Written Notice** of intent to file a lawsuit or to arbitrate against an **Insured**, and/or

        3.     a written demand for money or services delivered to an **Insured**, and/or

        4.     a **Written Notice**, which must be received within ninety (90) days of the date of **Injury**, from the Named Insured or Additional Named Insured of a **Loss Event** which the Named Insured or Additional Named Insured reasonably believes is likely to result in a written demand for money or services or service of process.  The **Written Notice** must contain the name of the injured

person and any witnesses, the specifics as to the nature, time and place of the **Loss Event** and the circumstances by which the **Insured** first became aware of the **Injury** suffered,

and which is the result of a **Loss Event** which occurred subsequent to the **Retroactive Date** of this policy and which has been reported to the **Company** in writing prior to the **Expiration Date** or the expiration of an applicable **Extended Reporting Period**.

All other terms, conditions and exclusions of the policy remain unchanged.

MML 304 (10/12)

Policy No. MME0000012

### CANCELLATION AMENDATORY ENDORSEMENT – 90 DAYS NOTICE

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that Article VII. <u>CONDITIONS</u>, Section G. <u>Cancellation</u>, Item 2.b. is deleted in its entirety and replaced by the following:

VII.  <u>CONDITIONS</u>

      G.      <u>Cancellation</u>

            2.      The **Company** may cancel this policy by mailing or delivering to the Named Insured written notice of intent to cancel:

                    b.      Ninety (90) days before the effective date of cancellation, if the **Company** cancels for any other reason.

All other terms, conditions and exclusions of the policy remain unchanged.

Policy No. MME0000012

## CLAIMS EXPENSE IN ADDITION TO LIMITS AMENDATORY ENDORSEMENT

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, the **Company** hereby agrees to pay **Claims Expenses** in addition to the limits of liability as specified on the **DECLARATIONS** page.

Nothing contained in this endorsement shall operate to prevent the **Company** from tendering its limits of liability hereunder as provided under the policy to which this endorsement is attached (Article I.A.), and by such action eliminating its responsibility for future **Claims Expenses**.

All other terms, conditions and exclusions of the policy remain unchanged.

MML 308 (10/12)

Page 1 of 1

Policy No. MME0000012

## DEDUCTIBLE ENDORSEMENT

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that Article V. <u>LIMITS OF LIABILITY</u>, Section A. is amended to include the following:

The Named Insured agrees to indemnify the **Company** for **Indemnity** and **Claims Expenses** paid by the **Company** for the following amounts:

Deductible Schedule

| | | | | | |
|---|---|---|---|---|---|
| ☐ | **<u>Indemnity</u> Only** | $ | | Per **Loss Event** | |
| | | $ | | Policy Aggregate | |
| ☐ | **<u>Claims Expense</u> Only** | $ | | Per **Loss Event** | |
| | | $ | | Policy Aggregate | |
| ☒ | **<u>Indemnity</u> and <u>Claims Expense</u>** | $ | 100,000 | Per **Loss Event** | |
| | | $ | 400,000 | Policy Aggregate | |

The limits of liability will be reduced by the amount of the deductible.

In the event the policy is cancelled for any reason, and there is a potential outstanding amount due under this deductible for open claims, the **Company** will withhold the full amount of the deductible from any return premium.

All other terms, conditions and exclusions of the policy remain unchanged.

MML 315 (10/12)                                                                                      Page 1 of 1

Policy No. MME0000012

## EXCLUSION OF SPECIFIED LOCATIONS,
## MEDICAL SPECIALTIES, MEDICAL PROFESSIONALS OR LOSS EVENTS

This endorsement modifies the insurance policy as follows:

1.  Article I. COVERAGE, Section A. Insuring Clause does not apply to **Injury** arising out of the **Loss Events**, **Locations,** Medical Professionals or Medical Specialties described below.

    LOSS EVENT

    LOCATION OF LOSS EVENT

    LOCATION

    MEDICAL SPECIALTY
    Hospitalists

    MEDICAL PROFESSIONAL

2.  Article VI. DEFINITIONS is amended to include the following:

    P.    **"Location"** means premises involving the same or connecting lots, or premise whose connection is interrupted only by a street, roadway, waterway or right of way railroad.

All other terms, conditions and exclusions of the policy remain unchanged.

MML 317 (10/12)                                                                                     Page 1 of 1

Policy No. MME0000012

## EXTENDED REPORTING PERIOD ENDORSEMENT

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that Article VIII. **EXTENDED REPORTING PERIOD** is added to this policy as follows:

VIII.   **EXTENDED REPORTING PERIOD**

A.   The **Company** will provide an **Extended Reporting Period** only if this policy is cancelled or non-renewed for any reason except:

  1.   Failure to pay premiums due; or
  2.   Failure to pay deductibles due; or
  3.   Failure to comply with the terms and conditions of this policy; and

B.   In no event will any **Claim** reported under the **Extended Reporting Period** endorsement operate to increase or reinstate the limits of liability of this policy; however, the deductible aggregate, if any, indicated in ITEM 6. of the **DECLARATIONS** page shall be reinstated as respects **Claims** first made under the **Extended Reporting Period.** All terms and provisions of this policy shall remain in full force and effect.

C.   The rights under this endorsement will apply only if the Named Insured:

  1.   Provides the **Company** with **Written Notice**, postmarked within thirty (30) days of the **Expiration Date**, of intent to exercise this endorsement; and

  2.   Pays the premium due for this endorsement, postmarked within thirty (30) days of the **Expiration Date**.

  **Extended Reporting Period:**

  Option 1:   Three (3) years, starting with the policy **Expiration Date**.
  Premium:   125% of annual audited premium, subject to a minimum premium of $1,404,566.

  Option 2:   Seven (7) years, starting with the policy **Expiration Date**.
  Premium:   150% of annual audited premium, subject to a minimum premium of $1,685,480.

D.   A **Claim** first made during the **Extended Reporting Period** will be deemed to have been made on the date reported to the **Company** pursuant to the policy, Article II. WHEN A **CLAIM** IS TO BE CONSIDERED AS FIRST MADE, Section B. A **Claim** to which this Policy Applies, provided the **Claim** first made is a result of a **Loss Event** occurring prior to the **Expiration Date**, but not before any applicable **Retroactive Date**.

All other terms, conditions and exclusions of the policy remain unchanged.

MML 324 (10/12)                                                                                            Page 1 of 1

Policy No. MME0000012

## MEDICAL DIRECTOR FOR THE NAMED INSURED COVERAGE ENDORSEMENT

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that Article I. <u>COVERAGE</u>, Section B. <u>Exclusions</u>, Item 3. is deleted in its entirety and replaced with following:

I.  <u>COVERAGE</u>

    B.  <u>Exclusions</u>

        3.  To liability of an **Insured** in the capacity of a proprietor, Medical Director, hospital administrator, superintendent, officer, shareholder, agent or member of the board of directors, trustees or governors of any hospital sanitarium, clinic with bed and board facilities, nursing home, laboratory or other business enterprise; provided however, that this exclusion does not apply to an **Insured** acting within the scope of his or her duties as Medical Director for the Named Insured.

All other terms, conditions and exclusions of the policy remain unchanged.

MML 341 (10/12)                                                                                    Page 1 of 1

Policy No. MME0000012

## PREMIUM AUDIT ENDORSEMENT

The premium for this policy is provisional.  Within thirty (30) days after the expiration date of this policy, the Named Insured must report to the **Company** the actual number of exposure units incurred during the policy period for the types of exposure units designated below.  The **Company** will adjust the premium according to the actual number of exposure units reported by the Named Insured.  In the event the actual number of exposure units reported by the Named Insured exceeds the minimum exposure units set forth below, the Named Insured agrees to pay the audit additional premium for the actual number of exposure units in excess of the minimum exposure units set forth below.  The audit additional premium will be determined by applying the rates shown below to the number of actual exposure units reported by the Named Insured in excess of the minimum exposure units indicated below.

In the event the actual number of exposure units reported by the Named Insured is equal to <u>or</u> less than the minimum exposure units indicated below, no premium will be returned to the Named Insured.

| TYPE OF EXPOSURE UNIT | MINIMUM EXPOSURE UNIT | RATE PER EXPOSURE UNIT |
|---|---|---|
| Emergency Room Visits | 377,100 | $1.18 |
| Urgent Care Visits | 238,220 | $0.53 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Policy No. MME0000012

## SCHEDULED LOCATION COVERAGE LIMITATION ENDORSEMENT

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that this insurance provides coverage for, and applies only to, **Loss Events** occurring subsequent to the **Retroactive Date** and prior to the termination date at the locations scheduled below:

### Schedule of Locations

| Location | Retroactive Date | Termination Date |
|---|---|---|
| Beckley ARH Hospital<br>306 Stanaford Road<br>Beckley, WV 25801 | 04/01/2005 | 06/30/2007 |
| Bluegrass Community Hospital<br>360 Armsden Avenue<br>Versailles, KY 40383 | 05/01/2010 | |
| Bourbon Community Hospital<br>9 Linville Drive<br>Paris, KY 40361 | 05/01/2010 | |
| Caldwell Medical Center<br>100 Medical Center Drive<br>Princeton, KY 42445 | 01/01/2010 | 09/30/2010 |
| Camden Clark Medical Center – Memorial Campus<br>800 Garfield Avenue<br>Parkersburg, WV 26101 | 06/01/2013 | |
| Carroll County Memorial Hospital<br>309 11th Street<br>Carrollton, KY 41008 | 08/01/2007 | 12/04/2009 |
| Casey County Hospital<br>187 Wilford Avenue<br>Liberty, KY 42539 | 09/01/2003 | 11/23/2011 |
| Clark Regional Medical Center<br>1101 Lexington Avenue<br>Winchester, KY 40391 | 07/01/2010 | |
| Ephraim McDowell Fort Logan Hospital<br>110 Metker Trail<br>Stanford, KY 40484 | 09/01/2003 | |
| Ephraim McDowell Regional Medical Center<br>217 South Third Street<br>Danville, KY 40422 | 09/01/2003 | |

MML362 (10/12)                                                                 Page 1 of 4

## Schedule of Locations (Continued)

| Location | Retroactive Date | Termination Date |
|---|---|---|
| Fleming County Hospital<br>55 Foundation Drive<br>Flemingsburg, KY 41041 | 10/01/2012 | |
| Georgetown Community Hospital<br>1140 Lexington Road<br>Georgetown, KY 40324 | 06/01/2009 | |
| Greenview Regional Hospital<br>1801 Ashley Circle<br>Bowling Green, KY 42104 | 10/01/2012 | 01/31/2013 |
| Harrison Memorial Hospital<br>1210 KY Highway 36E<br>Cynthania, KY 41031 | 03/11/2009 | |
| Jackson Purchase Medical Center<br>1099 Medical Center Circle<br>Mayfield, KY 42066 | 09/01/2003 | |
| James B Haggin Memorial Hospital<br>464 Linden Avenue<br>Harrodsburg, KY 40330 | 01/06/2008 | |
| Lake Cumberland Regional Hospital<br>305 Langdon Street<br>Somerset, KY 42503 | 01/15/2009 | |
| Logan Regional Medical Center<br>20 Hospital Drive<br>Logan, WV | 03/20/2012 | |
| Marcum & Wallace Memorial Hospital<br>60 Mercy Court<br>Irvine, KY 40336 | 09/01/2003 | |
| Meadowview Regional Medical Center<br>989 Medical Park Drive<br>Maysville, KY 41056 | 09/01/2003 | |
| Middlesboro ARH Hospital<br>3600 West Cumberland Avenue<br>Middlesboro, KY 40965 | 04/01/2005 | 06/30/2007 |

MML362 (10/12)

**Schedule of Locations (Continued)**

| Location | Retroactive Date | Termination Date |
|---|---|---|
| Pikeville Medical Center<br>911 Bypass Road<br>Pikeville, KY 41501 | 07/08/2006 | |
| Rockcastle Regional Hospital<br>145 Newcomb Avenue<br>Mt. Vernon, KY 40456 | 02/01/2010 | |
| Pattie A Clay Regional Medical Center<br>801 Eastern Bypass<br>Richmond, KY 40475 | 09/01/2003 | |
| Pineville Community Hospital<br>850 Riverview Avenue<br>Pineville, KY 40977 | 02/01/2012 | |
| Spring View Hospital<br>320 Loretto Road<br>Lebanon, KY 40033 | 03/01/2010 | |
| St. Joseph – Berea<br>305 Estill Street<br>Berea, KY 40403 | 09/01/2003 | 01/10/2006 |
| St. Joseph – London<br>1001 Saint Joseph Lane<br>London, KY 40741 | 11/01/2005 | |
| St. Joseph – Mt. Sterling<br>225 Falcon Drive<br>Mt. Sterling, KY 40353 | 09/01/2003 | 01/31/2008 |
| St. Joseph Hospital – Parkersburg<br>1824 Murdoch Avenue<br>Parkersburg, WV 26101 | 06/01/2013 | |
| St. Joseph Hospital and Health Center<br>1907 West Sycamore Street<br>Kokomo, IN 46901 | 05/15/2013 | |
| Summers County ARH Hospital<br>1500 Terrace Street<br>Hinton, WV 25951 | 04/01/2005 | 06/30/2007 |
| TJ Samson Community Hospital<br>1201 North Race Street<br>Glasgow, KY 42141 | 10/01/2010 | 07/15/2013 |
| UK Good Samaritan Hospital<br>310 South Limestone Street<br>Lexington, KY 40508 | 01/08/2005 | |

MML362 (10/12)

## Schedule of Locations (Continued)

| | | |
|---|---|---|
| Wal-Mart Clinic (operated by Harrison Memorial Hospital)<br>805 US Highway 27 South<br>Cynthiana, KY  41031 | 02/01/2012 | |
| Williamson ARH Hospital<br>260 Hospital Drive<br>South Williamson, KY  41503 | 04/01/2005 | 06/30/2007 |

All other terms, conditions and exclusions of the policy remain unchanged.

MML362 (10/12)                                                                                      Page 4 of 4

Policy No. MME0000012

## ADMINISTRATIVE HEARING COVERAGE ENDORSEMENT

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that Article III. <u>INVESTIGATION, DEFENSE AND SETTLEMENT</u> is amended to add the following as Section C.:

C.   <u>Administrative Hearing</u>: The **Company** shall pay costs, in addition to the limits of liability herein, to defend an **Insured** against actions by a valid state licensing board, arising out of the rendering of or failure to render **Medical Professional Services**, subject to the following:

1. The action(s) must be directly related to a **Claim** to which this policy applies and which has been reported to the **Company** pursuant to the terms of this policy.

2. The additional payments made under this Section C. shall not exceed $25,000 per **Claim** nor $75,000 aggregate for all **Claims**.

3. No deductible apples to coverage for Administrative Hearings.

All other terms, conditions and exclusions of the policy remain unchanged.

MML 366 (10/12)                                                                                    Page 1 of 1

Policy No. MME0000012

## <u>GENERAL CHANGE ENDORSEMENT (NAMED INSURED)</u>

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that Item 1. Named Insured, as shown on the **DECLARATIONS** page, is amended to include:

| <u>Entity</u> | <u>Retroactive Date</u> | <u>Termination Date</u> |
|---|---|---|
| Marshall Administrative Services, Inc. | 09/20/2011 | |
| Marshall Emergency Services Associates, PLLC | 09/20/2011 | |
| Marshall Emergency Services Associates, PSC | 09/01/2003 | 09/20/2011 |
| Marshall Independent Physicians, LLC | 12/28/2012 | |
| Marshall Physician Services, LLC | 09/20/2011 | |
| Marshall PLLC Holdings, LLC | 09/20/2011 | |
| Marshall West Virginia ED Associates, LLC | 02/16/2012 | |
| MESA Indiana ED Associates, LLC | 05/01/2013 | |
| MESA Medical Group, PLLC fka Marshall Emergency Services Associates, PLLC | 09/20/2011 | |

All other terms, conditions and exclusions of the policy remain unchanged.

MML 2100 (10/12)

Policy No. MME0000012

## GENERAL CHANGE ENDORSEMENT (AMEND SEXUAL MISCONDUCT EXCLUSION WITH SUBLIMIT)

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that Article I. <u>COVERAGE</u>, Section B. <u>Exclusions</u>, Item 10. is deleted in its entirety and replaced by the following:

    I.   <u>COVERAGE</u>

       A.  <u>Exclusions</u>

          9.  To any liability of an **Insured** resulting from sexual intimacy, sexual molestation, sexual harassment, sexual exploitation, or sexual assault of any kind; however, if such acts are alleged in conjunction with a **Loss Event** to which this policy applies, this exclusion does not apply to:

             a.  The **Insured** who allegedly committed such misconduct unless it is judicially determined that the **Insured** committed such misconduct.  If it is judicially determined that the **Insured** committed the misconduct, we will not pay **Damages**.

             b.  Any other **Insured**, unless that **Insured**

                (i)  knew or should have know about the misconduct allegedly committed by the **Insured** but failed to prevent or stop it; or

                (ii)  knew or should have known that the **Insured** who allegedly committed the misconduct had a prior history of sexual misconduct.

It is further agreed that ITEM 6. Limits of Liability, as shown on the **DECLARATIONS** page, is amended to include the following sublimit:

      **SEXUAL MISCONDUCT**
      $250,000 Per **Loss Event**
      $500,000 Annual Aggregate

This sublimit is part of and is not in addition to the Limits of Liability as shown in ITEM 6. on the **DECLARATIONS** page.

All other terms, conditions and exclusions of the policy remain unchanged.

Policy No. MME0000012

## GENERAL CHANGE ENDORSEMENT (CONSENT TO SETTLE ENDORSEMENT)

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, for **Claims** first made on or after January 26, 2012, it is agreed that Article III. INVESTIGATION, DEFENSE AND SETTLEMENT, Section B. Settlement is deleted in its entirety and replaced by the following:

III.     INVESTIGATION, DEFENSE AND SETTLEMENT

      B.     Settlement.     The **Company** will not settle any **Claim** without the consent of the Named Insured.  If the Named Insured refuses to consent to a settlement that the Company recommends and the claimant will accept, then the **Company** will have the right, but not the duty or obligation, to continue to defend any such **Claim** or suit.  The **Company's** liability for any settlement or judgment shall not exceed the amount for which the **Company** could have settled if the Named Insured had consented less all of the **Claims Expense** incurred from the date of the **Company's** recommendation.  This amount constitutes the applicable limits of liability of the policy.

All other terms, conditions and exclusions of the policy remain unchanged.

Policy No. MME0000012

### GENERAL CHANGE ENDORSEMENT (SPECIAL EVENT)

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that this insurance provides coverage for **Loss Events** arising out of an Additional Named Insured's rendering of or failure to render **Medical Professional Services**, regardless of whether or not such services are provided on behalf of the Named Insured, but only at the event shown below:

| Event | Date |
|---|---|
| 2012 Starlight Mile and 5K<br>Richmond, KY | October 19, 2012 |

All other terms, conditions and exclusions of the policy remain unchanged.

MML 2100 (10/12)

Page 1 of 1

Policy No. MME0000012

## GENERAL CHANGE ENDORSEMENT (LIMITS OF LIABILITY)

This endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that ITEM 6. Limits of Liability, as shown on the **DECLARATIONS** page, is amended as follows:

ITEM 6.          Limits of Liability:

               **INDIANA**
               $250,000 Per Physician Per **Loss Event**
               $750,000 Per Physician Aggregate

               **ALL OTHER STATES**
               $1,000,000 Per **Loss Event**
               $3,000,000 Per Physician Aggregate

               **APPLICABLE TO ALL OF THE ABOVE**
               $10,000,000 Policy Aggregate

The above stated Limits of Liability for IN apply to **Insureds** who are qualified for and enrolled in the IN Patient Compensation Fund and are not subject to the Policy Aggregate indicated above.  If the **Insured** is not enrolled in the IN Patient Compensation Fund, the **ALL OTHER STATES** Limits of Liability apply.  Any payments made under the amended Limits of Liability set forth above erode the Policy Aggregate.

All other terms, conditions and exclusions of the policy remain unchanged.

MML 2100 (10/12)                                                                                          Page 1 of 1

Policy No. MME0000012

Effective October 1, 2013, this endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that **GENERAL CHANGE ENDORSEMENT (LIMITS OF LIABILITY)**, attached at policy issuance, is corrected to reflect that it is **Endorsement No. 1.**

All other terms, conditions and exclusions of the policy remain unchanged.

**Endorsement No. 2**

MML 2100 (10/12)                                                                                                Page 1 of 1

Policy No. MME0000012

Effective October 11, 2013, this endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that Article IV. <u>PERSONS INSURED</u> is amended to include TeamHealth, Inc., but only as respects liability arising out of the rendering or failure to render **Medical Professional Services** by the Named Insured or an Additional Named Insured at a location shown on the **<u>SCHEDULED LOCATION COVERAGE LIMITATION ENDORSEMENT</u>**.

All other terms, conditions and exclusions of the policy remain unchanged.

**Endorsement No. 3**

MML 2100 (10/12)                                                                                    Page 1 of 1

Policy No. MME0000012

Effective October 01, 2013, this endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that the **SCHEDULED LOCATION COVERAGE LIMITATION ENDORSEMENT**, attached it the policy at issuance, is amended as follows:

### SCHEDULED LOCATION COVERAGE LIMITATION ENDORSEMENT

**Schedule of Locations**

| **Location** | **Retroactive Date** | **Termination Date** |
|---|---|---|
| Baptist Health fka<br>Pattie A. Clay Regional Medical Center<br>801 Eastern Bypass<br>Richmond, KY  40475 | 09/01/2003 | |

All other terms, conditions and exclusions of the policy remain unchanged.

**Endorsement No. 4**

MML2100 (10/12)

Page 1 of 1

Policy No. MME0000012

## EXERCISE EXTENDED REPORTING PERIOD ENDORSEMENT

Effective October 1, 2014, this endorsement modifies policy number MME0000012 as follows:

In consideration of an additional premium of $2,022,575, it is agreed that the **Extended Reporting Period** coverage is hereby exercised for an unlimited period of time.

Coverage is afforded hereunder provided that the covered **Claim** results from a **Loss Event** that occurred between the **Retroactive Date** of 09/01/2003 and as per schedules in the policy and the policy **Expiration Date** of 10/01/2014, and **Written Notice** thereof is given to the **Company** during the **Extended Reporting Period**.

The limits of liability provided hereunder shall be the limits that applied to the policy period from 10/01/2013 to 10/01/2014.  Exercising this **Extended Reporting Period** coverage will not increase or reinstate the limits of liability or extend the policy period as stated in the policy; however, the deductible aggregate, if any, is reinstated.

All other terms, conditions and exclusions of the policy remain unchanged.

By: _____

James R. Brooks

**Endorsement No. 5**

Policy No. MME0000012

Effective February 15, 2014, this endorsement modifies the insurance policy as follows:

In consideration of the premium charged, it is agreed that Article IV. <u>PERSONS INSURED</u> is amended to include the entities shown below, but only as respects liability arising out of the rendering of or failure to render **Medical Professional Services** by the Named Insured or an Additional Named Insured under contract with the Named Insured at a location shown on the **<u>SCHEDULED LOCATION COVERAGE LIMITATION ENDORSEMENT</u>**.

**<u>Entity</u>**

Southeastern Emergency Physicians of Memphis, Inc.,
Southeastern Emergency Physicians, Inc.
Health Care Alliance, Inc.
Cherokee Emergency Services, Inc.

All other terms, conditions and exclusions of the policy remain unchanged.

**Endorsement No. 6**