UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON
CASE NO. 5:16-cv-00325-JMH

MT. HAWLEY INSURANCE COMPANY                                    PLAINTIFF

**REPLY IN SUPPORT OF**
v.                              **MOTION FOR JUDGMENT ON THE PLEADINGS**

MESA MEDICAL GROUP, PLLC, et al.                                DEFENDANT

The issue before the Court is a matter of law, and Mt. Hawley Insurance Company is entitled to a judgment on the pleadings because its right to tender the coverage limit to Defendants and discontinue the defense is clear and unambiguous, the right is between contracting parties and does not contravene public policy, and Mt. Hawley's performance of its policy obligations has been real and not illusory. This is a bargained-for right that cannot be read out of the Policy.

In their Response to Mt. Hawley's motion for judgment on the pleadings, Defendants present several arguments in urging the Court to conclude that "Mt. Hawley's duty to defend is triggered and continues as long as the Insureds face a claim falling within the scope of the Policy's coverage, as exists here." (Doc. #17, p. 11; Response p. 9). They acknowledge that the plain language in the Insuring Agreement gives Mt. Hawley the right to tender the coverage limit to Defendants and discontinue the defense it had been providing, but argue the right to tender to them was "modified by bargained-for endorsements." The Claims Expense Endorsement modifies the Insuring Agreement to make claim expenses payable in addition to the coverage limit; but it also expressly states that it does not change the right to tender. The Consent to Settle

Endorsement gives Defendants the right to consent to any settlement with a claimant, but (i) it was never implicated here because Haley Clontz did not accept Mt. Hawley's offer, and (ii) the Endorsement actually does what Defendants argue the Policy prohibits – it reduces the coverage limit to the proposed settlement amount and converts the policy to an eroding one when the insured does not consent. It, too, has no effect on Mt. Hawley's right to tender the coverage limit to the Insured.

Defendants also argue that Mt. Hawley cannot enforce the Policy terms because it did not properly reserve the right to deny coverage; but that is not at all what Mt. Hawley is doing – Mt. Hawley is completing its performance of the conjoined defense and indemnity obligations in the Policy. And the suggestion that enforcing the plain language of the Insuring Agreement would make the Policy coverage illusory is itself built with smoke and mirrors – Mt. Hawley's payment of $1 million to Defendants and payment for their defense counsel through September 1, 2016 were both very real.

Not to be overlooked is the fact that Defendants have cobbled together their arguments with the incorrect premise that Kentucky has a common law duty to defend and with a corresponding reference to a treatise that, when words omitted with an ellipsis are restored, actually says the opposite. Where the law does not require *any* defense duty in an insurance policy, the court looks only to the policy language for the scope of and limits on one that *is* bargained for and included. Defendants' suggestion that the Court should use common law to remove Mt. Hawley's right to tender to them is entirely misplaced.

**A.    The duty to defend is created and controlled by the parties' contract, not common law.**

As a starting point, it is important to understand that any duty to defend is created and limited by the terms of the Policy, not by common law. Medical malpractice insurance is

voluntary insurance coverage not required under Kentucky law. There are no Kentucky statutes that require an insurer to provide *any* duty to defend in any policy. There is no stated public policy that restricts the rights of parties to an insurance contract from structuring the duty to defend in a liability policy any way they choose, from including none at all to including one that never ends. Therefore, a provision agreed to in a contract stating the duty to defend and duty to pay are not separate and allowing an insurer to discontinue a defense after it tenders the applicable policy limits to the insured cannot be against public policy. In fact, "public policy recognizes that insurance carriers have the right to impose reasonable limitations on their coverage." *Sparks v. Trustguard Ins. Co.,* 389 S.W.3d 121,129-30 (Ky. App. 2012). This is particularly true with coverage that does not impact any innocent third-party tort victim.[1]

      Defendants argue that insurers have some sort of "discrete duty to defend" or "independent duty to defend" that prevents an insurer "from withdrawing a defense where the insurer's duty to defend is distinct from the duty to indemnify." (Response at 1, 6, 15). There is no common law duty to defend that must be honored as Defendants suggest. The duty to defend is a creation of contract, and, as such, its breadth and application are completely dependent on the actual language employed in each policy. As discussed more fully on page 12-13 of Mt. Hawley's original Memorandum, parties are free to define this duty more narrowly or modify the duty any way they choose by language in the actual policy. See *Okada v. MGIC Indemnity Corp.*, 795 F.2d 1450, 1454 (9th Cir. Haw. 1986); 7cf-196 Appleman on Insurance § 4682 (2016). The sophisticated parties to this Policy chose language that restricted the duty to defend. Defendants' position would require the Court to disregard the actual policy terms instead of

---

[1] Limiting voluntary coverage, which is exclusively between two contracting parties, does not contravene public policy. *Gower v. Alfa Vision Ins. Corp,* 2016 Ky. App. Unpub. LEXIS 772 (Ky. App. Nov. 18, 2016) (not final, copy attached – Mt. Hawley refers to this new opinion not as authority, but for its internal cites to authority for its holdings).

construing and applying them. All the statements of general law applicable to the duty to defend and on the nature of indemnity policies offered by Defendants presuppose that there is no explicit policy language restricting the scope or duration of the duty to defend.

Defendants' reliance on *Ursprung v. Safeco Ins. Co*., 497 S.W.2d 726 (Ky.App. 1973) to support their common law argument is misplaced. Defendants contend that the policy language here "is almost identical to that at issue in *Ursprung*" and therefore requires a similar result. (Response at 9). However, Defendants quote to the Court only a portion of the Policy language and omit the most significant parts that state in clear and uncertain terms the exact opposite. Defendants include the following from the Insuring Agreement:

> "The Base Form provides that Mt. Hawley 'shall have the right and duty to defend any suit against the **Insured** seeking **Damages** which are payable under the terms of this policy.' Policy at 1 of 10. This language which is identical to that at issue in *Ursprung*, means that Mt. Hawley's duty to defend is triggered and continues as long as the Insureds face a claim falling within the scope of the Policy's coverage."

But Defendants failed to include the Insuring Agreement language that appears in the preceding sentence: "[w]ith respect to the insurance provided hereunder, the duty to defend and duty to pay are not separate." They also failed to include language that appears in the sentence following their quote: "the **Company** shall not be obligated to pay any **Claim** or judgment or to defend or to continue to defend any suit or **Claim** after the applicable limit of the **Company's** liability has been tendered to the **Insured** or the claimant or exhausted by the payment of judgments, settlements or by **Claims Expenses**." [Doc. No. 11-1, p. 5]. This language makes it clear that the duty to defend in this Policy is *not* broader than the duty to indemnify and the duty to defend does *not* continue "as long as the Insured face a claim." (Response at 9).

In *Ursprung*, there was no policy language that, like here, combined the duty to defend with the duty to indemnify. There was no policy language that, like here, explicitly authorized the insurer to discontinue the defense after the applicable policy limit has been tendered to the

insured. The court in *Ursprung* was construing the Safeco general liability policy language before it, not creating common law for all liability policies everywhere.

Defendants also quote from an insurance treatise in support of their position, but again with less than a full quote. On page 8 of their Response, Defendants cite a treatise by Allen P. Windt with this description: "the insurer has 'an ongoing responsibility to the insured with respect to the defense even if the policy limits have been met.' 1 Insurance Claims & Disputes §4:32 (6th ed.)." However, the full quote from the treatise is: "As a result, an insurer under such a policy may, ***absent an explicit policy provision to the contrary***, have an ongoing responsibility to the insured with respect to the defense even if the policy limits have been met." (emphasis added).[2] There is an explicit policy provision to the contrary in the Mt. Hawley Policy. Windt recognizes the fact that courts allow parties to the insurance policy to modify and restrict the duty to defend by the contract terms they choose.

Defendants also attempt to distinguish this Court's holding in *Safeco Ins. Co. v. Ritz*, 2006 U.S. Dist. LEXIS 1604 (E.D.Ky. 2006), which terminated the duty to defend once policy limits were exhausted, by arguing that the language was entirely different or the outcome was

---

[2] On page 12 of the Response, Defendants quote the Windt treatise again referencing a survey of cases that they claim support the statement that insurers are not allowed "to withdraw a defense by paying limits into court or to the insured because doing so protects the insured's interests." However, the part of the treatise Defendants are referencing is still prefaced with the language "absent an explicit policy provision to the contrary" and actually shows a division of authority as to the insurer's defense obligations even when there is no explicit policy provision. The treatise goes on to advise that "[a] duty to defend provision can be expressly made to end when the policy limits are reached" and cites several cases from other jurisdictions in support.

Although Defendants claim it is improper for an insurer to try to protect itself by enforcing agreed-upon policy provisions (Reps. at 12), the Windt treatise states:

> It is not bad faith for an insurer to exercise one of its rights, in order to protect its own interests, even though there is an adverse effect on the insured … An insurer has the right to act in its own interest. Even though paying its indemnification obligation at the earliest possible date results in the insurer terminating its defense obligation sooner, typical policy language does not prohibit an insurer from making such a settlement payment – just as an insurer has the right to act in its own interest in settling solely the covered claims in order to terminate a duty to defend, since policy language does not prohibit an insurer from making such a settlement payment.

*Id*.

just wrong. Contrary to Defendants' position, this Court held that the limitation on the duty to defend was valid under Kentucky law, recognizing that parties may agree to contract terms that alter or restrict the duty to defend, and those contract provisions will be enforced. *Id*. at *12-13. *Ritz* involved exhaustion of limits by the payment of judgments or settlements. The only real difference in Mt. Hawley's policy is that it expressly provides *an additional* manner of exhaustion – tender of policy limits to the insured. There is no reason why this additional policy language, agreed upon by sophisticated parties, should not also be upheld.[3]

**B. Mt. Hawley's payment of defense costs and the Policy limit have been real, not illusory.**

Defendants have argued that enforcing the tender right from the Insuring Agreement would render the Policy coverage illusory. Coverage can be illusory "where part of a premium is superficially allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 129 (Ky. App. 2012).[4] For example in *Chaffin v. Kentucky Farm Bureau Ins. Cos.*, 789 S.W.2d 754, 755, 757 (Ky. 1990), the court deemed it illusory where an insured paid separate premiums for multiple units of uninsured motorist coverage, but then an anti-stacking provision purported to limit recovery to one unit of coverage.

Here, Defendants set up this argument by implying that Mt. Hawley's plan was to make a policy limit payment to Haley Clontz, getting nothing in return, then to discontinue the defense. However, the pleadings and exhibits show otherwise. Mt. Hawley offered a settlement to Ms.

---

[3] Defendants also suggest that *Ritz* is different because Safeco's duty to defend related to "two unrelated claims." (Response, p. 11). However, that was not at all the case. If the claims were unrelated, then the liability limit for the latter claim could not have been exhausted by paying the limit for the first one.

[4] "Coverage is illusory when an insured cannot foresee any circumstances under which he or she would collect under a particular policy provision." *Gower v. Alfa Vision Ins. Corp,* 2016 Ky. App. Unpub. LEXIS 772 (Ky. App. Nov. 18, 2016) (not final) at *6. Here, Defendants have already collected the $1,000,000 tender and all defense costs until September 1, 2016.

Clontz that would have required her to release all claims and dismiss the underlying action. Only after she rejected that offer did Mt. Hawley send the August 18, 2016 letter attached as Exhibit C to Defendants' Counterclaim. That letter offered the policy limit not to Clontz, but instead to Defendants, and (on p. 6) tendered that limit to Defendants and requested payment instructions (indicating the payment would be to all Defendants if they did not provide instructions). It is also undisputed that Mt. Hawley paid for the defense of Defendants from when the suit was filed in July 2015 (Doc. # 6, p. 8) until September 1, 2016 and has paid the $1 million coverage limit to Defendants.

The suggestion that Mt. Hawley wants to have its cake and eat it too is backwards – Mt. Hawley has paid its entire $1 million cake to Defendants. Mt. Hawley's payments to defense counsel were very real and not an illusion. Mt. Hawley's $1,000,000 payment to the insureds was real. Defendants simply want to make *Mt. Hawley's right to tender* illusory by forcing Mt. Hawley to pay for more Claims Expense than it agreed to pay when it issued the Policy.

There is no grant of coverage that is being taken away. The Policy never gave unlimited defense coverage to Defendants. And, as explained more fully below, the Policy did not even provide a static $1 million coverage limit under all circumstances.

**C.     Defendants' arguments based on the Policy language, including the endorsements, is confusing and misplaced.**

Defendants again isolate portions of the Insuring Agreement and two endorsements to argue that Mt. Hawley can only make the tender to them "*after* the Insureds' liability has been determined." (Response, p. 13). But, when the Policy is read as a whole, that argument simply makes no sense.

First, the Insuring Agreement that provides the indemnity obligation to "pay on behalf of the **Insured**" begins by stating that the obligation is "subject to the exclusions, limits of liability,

and other terms and conditions hereof." The *other terms and conditions* include the limitations on the duty to defend stated in the very next paragraph. That paragraph, as amended by endorsement, includes three distinct events that allow Mt. Hawley to make the tender at issue here: the applicable liability limit has been exhausted by the payment of payment of judgments; the limit has been exhausted by the payment of settlements; or the limit has been tendered to the Insured.

Under Defendants' argument, the only way that their liability can "be determined" is through a judgment. A settlement does not involve the establishment of liability; to the contrary, it generally results in no admission of liability. And a tender to the Insured likewise is not an adjudication of liability. But, the Insuring Agreement also provides that exhaustion short of an adjudication – by settlement or a tender to the Insured – will allow Mt. Hawley to discontinue its defense. Furthermore, Defendants' position is in conflict with the language that Mt. Hawley "shall not be obligated to pay any **Claim** or judgment or to defend or to continue to defend any suit or **Claim**" after one of the above events because the reference to and inclusion of "Claim" is broader than the term "judgment." Moreover, if Mt. Hawley could only discontinue its defense after the payment of a judgment, or even of a settlement, then the inclusion of the language granting the right to tender to the Insured would be entirely superfluous.[5]

It is important to keep in mind that, as Defendants have conceded, the rights granted to Mt. Hawley were bargained for rights, such that the significant right to tender should not be dismissed from the Policy by limiting it to a post-judgment payment. Defendants cite to the Claims Expense and Consent to Settle endorsements to support their argument that Mt. Hawley

---

[5] Defendants' reference to Section V of the Policy, titled LIMITS OF LIABILITY, is a misdirection. The Section V.B.1 reference to "after entry of the judgment" has absolutely no bearing on the defense obligation. In fact, those words come from the phrase "and all interest on the entire amount of any judgment therein which accrues after entry of the judgment ...." The excerpt lifted by Defendants concerns when post-judgment interest stops under the definition of Claims Expense and has nothing to do with the issue here.

can only tender after their liability has been established. While Defendants imply that the endorsements were issued *after* the Policy incepted, they were part of the bargained for policy on day one.

The Claims Expense Endorsement does not change the tender right in any way; in fact, it says the opposite. It explicitly refers back to the Insuring Agreement provisions stating: "[n]othing contained in the endorsement shall operate to prevent the **Company** from tendering its limits of liability hereunder as provided under the policy to which this endorsement is attached (Article I.A.), and by such action eliminating its responsibility for future **Claims Expenses**."[6] Without explanation, and despite this language, Defendants still contend that the endorsement "contradicts and modifies the Base Form provision that originally allowed the insurer to withdraw from defending once it paid its policy limits." (Response, p. 15). The only effect of the Claims Expense Endorsement was to add claims expenses to the coverage limit, which is exactly what Mt. Hawley has paid here. By adding the endorsement that increases Mt. Hawley's overall exposure, it was important that the parties expressly acknowledge that Mt. Hawley still had the right under the Insuring Agreement to discontinue the defense portion upon payment of the liability portion.

The Consent to Settle Endorsement is even more disconnected from the tender right than the Claims Expense Endorsement. Defendants contend that it gives "the Named Insured the exclusive right to decide whether a claim should be paid." (Response, p. 3). Actually, the Endorsement gives the Named Insured the right to prevent settlements to which it has not consented, not an exclusive right to decide whether to pay a claim. More importantly, it acts to reduce Mt. Hawley's exposure for both indemnity and claims expenses where the Named Insured has rejected a proposed settlement that the claimant is willing to accept: "The **Company's**

---

[6] Defendants omitted this language by using another ellipsis when quoting the endorsement.

liability for any settlement or judgment shall not exceed the amount for which the **Company** could have settled if the Named Insured had consented less all of the **Claims Expenses** incurred from the date of the **Company's** recommendation." Thus, in that circumstance, it reduces the coverage limit to the proposed settlement amount and makes the Policy revert to one in which claims expenses erode that adjusted coverage limit.

The Consent to Settle Endorsement contains no language suggesting that, when invoked, it terminates Mt. Hawley's right to tender. But in this action, the Endorsement is irrelevant because it was never invoked – Haley Clontz was not willing to agree to Mt. Hawley's offer.

Lastly, Defendants argue that waiver and estoppel apply because Mt. Hawley undertook their defense prior to the tender without reserving the right to tender. A reservation of rights is intended to alert an insured that it is being defended where there might not be any indemnity coverage. Mt. Hawley is not trying to deny coverage or assert a coverage defense here. To the contrary, Mt. Hawley has tendered its entire $1,000,000 policy limit to Defendants in the exercise a right that is reserved by the Policy, in performance of its coverage obligations, not in avoidance of them.

Waiver is the "voluntary and intentional relinquishment of a known, existing right or power under the terms of an insurance contract." *Edmondson v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,* 781 S.W.2d 753, 755 (Ky. 1989). "Estoppel gives no effect to a presumed intention, but defeats inequitable conduct. It offsets misleading conduct, acts, or representation which have induced a person entitled to rely thereon to change his position to his detriment." *Id*. There is no real argument that Mt. Hawley has voluntarily relinquished a known right under its policy and no claims of unauthorized conduct that has led Defendants to act to their detriment. These concepts simply do not apply.

**D.  Conclusion.**

Mt. Hawley requests that the Court grant its motion for judgment on the pleadings and grant all relief to which it is entitled.

        Respectfully submitted,

        s/Robert L. Steinmetz
        Robert L. Steinmetz
        rsteinmetz@gsblegal.com
        Gwin Steinmetz & Baird, PLLC
        401 West Main Street, Suite 1000
        Louisville, KY  40202
        (502) 618-5711 (phone)
        (502) 618-5701 (fax)

        *Counsel for Mt. Hawley Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Anthony Sammons, Anthony.sammons@dinsmore.com
    Joel C. Hopkins, jhopkins@saul.com
    Joseph C. Monahan, jmonahan@saul.com

        s/Robert L. Steinmetz

T:\STEINMETZ\RLI\Clontz v. Mt. Hawley\Reply for MJP.docx