UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| | ) Civil Case No. |
| v. | ) 16-CV-325-JMH |
| | ) |
| MESA MEDICAL GROUP, PLLC, et al., | ) |
| | ) **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) |

\*\*\*

This matter is before the Court upon Plaintiff's Motion for Judgment on the Pleadings [DE 15]. Plaintiff argues that, assuming the truth of all allegations in Defendants' Answer and Counterclaim, it is entitled to a declaration as a matter of law that the policy language in a professional services liability insurance policy with Defendants is valid and enforceable and (1) that Plaintiff's duty to defendants with respect to a lawsuit filed by Haley Clontz in the Pulaski Circuit Court terminated at the time it tendered its policy limit to Defendants, (2) that Plaintiff has not breached the Agreement, (3) that Plaintiff has not committed bad faith, and (4) that, thus, Defendants' Counterclaims for breach of contract and for breach of the implied covenant of good faith and fair dealing are without merit and should be dismissed. Defendants have filed a Response [DE 17], setting forth their objections, and

1

Plaintiff has filed a Reply [DE 19] in further support of its Motion.

## I.

Mt. Hawley Insurance Company ("Mt. Hawley") issued Medical Professional Liability Policy number MME0000012 to Marshall Medical Management, LLC, with a Policy Period of October 1, 2013 to October 1, 2014. Pursuant to an endorsement, MESA Medical Group, LLC, is a Named Insured under the Policy. The remaining Defendants also claim either Insured or Named Insured status under the Policy for the claims in the Clontz lawsuit. Mt. Hawley paid for counsel to represent Defendants in the Clontz lawsuit through the time that it tendered Policy limits to Defendants and then ceased providing a defense to defendants.

On July 9, 2015 Haley Clontz filed a lawsuit in Pulaski Circuit Court alleging medical malpractice which, after amendment, named Defendants, MESA Medical Group, PLLC ("MESA"), Southeastern Emergency Physicians, PLLC, Southeastern Emergency Services, P.C., Dr. Timothy Ziolkowski and Jennifer Dick ("the Contz lawsuit"). (Complaint at ¶14). Clontz alleged that Defendants failed to diagnose or treat a popliteal artery injury resulting from a fall, causing severe and permanent bodily injury, after she was brought by ambulance to the emergency room at Lake Cumberland Regional Hospital. With respect to the Clontz lawsuit, Mt. Hawley tendered the policy limit "jointly to

you as the Insured, and notifies you that it will discontinue defending you in the Litigation up on payment of the limit to you (jointly) or the plaintiff in the Litigation." Defendants argue that the Policy and Kentucky law do not allow Plaintiff to "dump" its policy limits and avoid its duty to defend, so they have rejected the tender.

The Policy has a $1 million liability limit and originally provided that:

> With respect to the insurance provided hereunder, the duty to defend and duty to pay are not separate. The Company shall have the right and duty to defend any suit against the Insured seeking Damages which are payable under the terms of this policy, even if the allegations of the suit are groundless, false, or fraudulent. It is further agreed that the Company may make such investigations as it deems expedient and may settle any Claim, but the Company shall not be obligated to pay any Claim or judgment or to defend or to continue to defend any suit or Claim after the applicable limit of the Company's liability has been tendered to the Insured or the claimant or exhausted by the payment of judgments, settlements or by Claims Expenses.

At some point, however, the parties agreed to a change endorsement which provided that, "[i]n consideration of the premium charged, [Plaintiff] hereby agrees to pay Claims Expenses in addition to the limits of liability as specified on the DECLARATIONS page." This endorsement alone did not impact

3

Mt. Hawley's right to effect what Defendants term a "dump and run" because "[n]othing contained in this endorsement shall operate to prevent the Company from tendering its limits of liability hereunder as provided under the policy to which this endorsements is attached . . . and by such action eliminating its responsibility for future Claims Expenses." [DE 11-1 at 18.]

Defendants argue, however, that a subsequent endorsement did. The General Change Endorsement (Consent to Settle Endorsement), provides that,

> The Company will not settle any Claim without the consent of the named Insured. If the Named Insured refuses to consent to a settlement that the Company recommends and the claimant will accept, then the Company will have the right, but not the duty or obligation, to continue to defend any such Claim or suit. The Company's liability for any settlement or judgment shall not exceed the amount for which the Company could have settled if the Named Insured had consented less all of the Claims Expense incurred from the date of the Company's recommendation. This amount constitutes the applicable limits of the liability of the policy.

[DE 11-1 at 31.].

## II.

With respect to Plaintiff's motion,

> "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion

4

> may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 479 F.2d 478, 480 (6th Cir.1973). But we "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 566, 581-82 (6th Cir. 2007).

**III.**

Defendants argue that Kentucky law does not permit an insurer with a duty to defend to avoid that duty by paying its policy limits and that the policy "only arguably allows Mt. Hawley to tender limits after the insureds' liability has been determined. . ." [DE 17 at 3, Page ID#: 198.] Defendants further argue that the language upon which Mt. Hawley relies "has been superseded and is contradicted by the bargained for endorsements" and that, to interpret the contract to permit a "dump and run," would render those endorsements meaningless and illusory. Finally, Defendants argue that the policy is, at best confusing and inconsistent and must be resolved in favor of the insureds or through the development of extrinsic evidence.

5

"The obligation to defend arises out of the insurance contract..." *Thompson v. West Amer. Ins. Co.*, 839 S.W.2d 579, 581 (Ky. Ct. App. 1992). Generally,

> . . . interpretation of an insurance contract is a matter of law for the court. *Morganfield National Bank v. Damien Elder & Sons,* [. . .] 836 S.W.2d 893 ([Ky.] 1992). While ambiguous terms are to be construed against the drafter and in favor of the insured, *Kentucky Farm Bureau Mutual Insurance Co. v. McKinney,* [. . .] 831 S.W.2d 164 ([Ky.] 1992), we must also give the policy a reasonable interpretation, and there is no requirement that every doubt be resolved against the insurer. *Motorists Mutual Ins. Co. v. RSJ, Inc.,* [. . .] 926 S.W.2d 679 ([Ky. Ct. App.] 1996).

*Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810–11 (Ky. Ct. App. 2000). The terms of the policy are "interpreted in light of the usage and understanding of the average person." *Id.* (citing *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205 (Ky. 1986).

Further,

> [a]n endorsement is later in time than the original policy; and it should prevail over any conflicting provisions of the policy." *Goodin v. General Accident Fire and Life Assurance Corporation,* [. . .]450 S.W.2d 252, 256 (Ky. Ct. App. 1970), quoting 1 Couch on Insurance 2d, § 4:36. This statement is correct, as far as it goes. The statement from Couch which precedes it sheds more light on this case: "The policy and its endorsements validly made a part thereof together form the contract of insurance, and are to be read together to determine the

> contract actually intended by the parties."
> *Id.* at § 4:36.

*Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 875 (Ky. 2002). "[A]n insurance contract must be construed without disregarding or inserting words or clauses and "seeming contradictions should be harmonized if reasonably possible." *Id.* at 875-76 (quoting 43 Am.Jur.2d, *Insurance,* § 275).

In this instance, the original policy provided for eroding limits – the total amount of insurance coverage for a claim was reduced over time by "claims expenses" such as attorney fees. At some point, the parties agreed that liability and claims expenses would be considered separately so that claims expenses would not erode the corpus of the liability fund until after the limits of liability were tendered by the insurer to the claimant or the insured. Finally, at some point, the parties agreed to another endorsement which provided that the insured had the right to reject settlement but, if the insured did so, claims expenses incurred after the rejection would begin to erode the corpus of the liability fund.

Defendants argue that reading the first endorsement to permit a "dump and run," by which the insurer tenders the policy limits and is absolved of future obligations to defend the insured, would render meaningless the parties' agreement that

7

liability and defense are separate obligations and would significantly reduce the value of the policy's $1 million liability limit for claims. Defendants argue that the insurer has "an ongoing responsibility to the insured with respect to the defense even if the policy limits have been met [. . . .,]" 1 Insurance Claims & Disputes § 4:32 (6th ed.) (emphasis added), and that ongoing responsibility exists regardless of whether the insurer has paid a judgment, contributed to a settlement or paid its policy limits into court or to the insured. *Id.* (*citing Ursprung v. Safeco Ins. Co. of America*, 497 S.W.2d 726 (Ky. 1973)). This would be the case if Plaintiff and Defendants had agreed only that Plaintiff "shall defend any suit alleging such damages which are payable under the terms of this policy," as in *Ursprung*, 497 S.W. 2d at 728. The language in the parties' endorsement goes further, however, and provides that Plaintiff retained the right to absolve itself of future claims expenses by tendering the full policy amount. Defendants have cited no law providing that such an agreement is unlawful.

Essentially, Defendants argue that Plaintiff may not withdraw from defense because the duty to defend is distinct from the duty to indemnify. Defendants argue that permitting the "dump and run" proposed by Plaintiff would render illusory the endorsements in which the parties bargained to give the Named Insured the exclusive right to decide whether a claim

should be paid and to make Plaintiff responsible for defense costs in addition to policy limits used to pay third-party claims. Defendants argue, as well, that the provisions that allow Plaintiff to tender policy limits and withdraw its defense create an ambiguity that must be interpreted in favor of the insured's reasonable expectations or require parole or extrinsic evidence to resolve.

Defendants are correct that, if the Court agrees with Plaintiff's reading of the contractual language, it could have the effect of significantly reducing the value of the policy's liability limit, but that is acceptable if the language of the policy, as amended, provides for it. Whether agreeing to reduce the value of the policy's liability limit is sensible or a bad idea or even something that the insured would have wanted with twenty-twenty hindsight is of no matter to this Court in the absence of coercion or the violation of a public policy that would render the agreement unenforceable. The parties agreed to it. Clearly, Plaintiff felt it was important to set a cap on its possible obligation under the Agreement and, presumably, bargained for that. Judgment on the pleadings is appropriate in this instance because, as a matter of law, the policy language contained in the Insuring Agreement of the professional services liability insurance policy issued by Mt. Hawley is valid and enforceable and Mt. Hawley's duty to pay any claim or judgment

9

or to continue to defend in the lawsuit filed by Haley Clontz (currently pending in Pulaski Circuit Court) terminated at the time Mt. Hawley tendered its policy limit to Defendants. In the absence of an obligation to provide a defense under the contract, there can be no breach of contract.[1] Neither can there be a breach of the implied covenant of good faith and fair dealing, as Defendants aver in their counterclaims.[2] Thus, the Court agrees that Defendants' counterclaims fail as a matter of law and should be dismissed.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Judgment on the Pleadings [DE 15] is **GRANTED**. Judgment will be entered by separate order.

---

[1] Plaintiff seeks, by its motion, a declaration that it has not acted in bad faith, but it does not seek this relief in its Complaint for declaratory judgment. [*See* Complaint, DE 1 at 5, Page ID#: 5 (demanding declaration that that "Mt. Hawley is not obligated to pay any Claim or judgment or to defend or to continue to defend the Clontz Action on behalf of Defendants, as of the date that Mt. Hawley tendered the applicable limits to Defendants"). In an absence of a motion to amend the Complaint, the Court declines to provide such relief but expresses doubt as to the success of a claim for bad faith. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521 (6th Cir. 2006) (citing *Wittmer*, 864 S.W.2d at 890) (holding that claimant would also have to "establish three elements to maintain a bad faith claim, regardless of whether the claim is brought under common law or statute: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.").

[2] "Within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out." *Farmers Bank & Trust Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citing *Ranier v. Mount Sterling National Bank,* 812 S.W.2d 154, 156 (Ky. 1991)). "An implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights." *Id.* (citing *Hunt Enterprises, Inc. v. John Deere Indus. Equipment, Co.,* 162 F.3d 1161, 1998 WL 552795 (6th Cir. 1998)).

This the 19th day of July, 2017.



Signed By:
*Joseph M. Hood* JMH
Senior U.S. District Judge